UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| 360 SECURITY PARTNERS, LLC AND | ) | |
| JASON PINSON, | ) | |
| | ) | |
| PLAINTIFFS, | ) | CIVIL ACTION NO. 3:21-cv-3004-B |
| | ) | |
| v. | ) | |
| | ) | |
| PAUL HAMMOND, | ) | |
| | ) | |
| DEFENDANT. | ) | |

---

### BRIEF IN SUPPORT OF MOTION TO DISMISS

---

TABLE OF CONTENTS

Page(s)

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. ii

I.      Background.............................................................................................................1

II.     Legal Standard for Deciding a Motion to Dismiss .............................................1

III.    Hammond's Documents for Consideration in his Motion...................................3

IV.     Summary of Argument ..........................................................................................3

V.      The Plaintiffs fail to allege a plausible claim for breach of fiduciary duty, and their claims should be dismissed..........................................................................................5

        A.   Plaintiff's allegations about breach of fiduciary duties ...............................5

        B.   Applicable substantive law concerning breach of fiduciary duty ...............6

        C.   The Plaintiffs claim that Hammond used bad management practices
             and decisions in a deliberate attempt to force the Plaintiffs to give
             him an ownership interest in 360 ..................................................................8

        D.   The allegations of breach of fiduciary duty are implausible.......................9

        1.   The alleged acts of mismanagement are not plausibly breaches of
             fiduciary duty because Hammond was an at-will employee ......................9

        2.   The scheme is implausible...........................................................................10

        E.   Hammond's Documents ...............................................................................10

        1.   The October 29 email from Hammond to Pinson does not support the
             Plaintiffs' allegations about the communication or Hammond's alleged
             scheme to obtain ownership.........................................................................10

        2.   Plaintiffs' material allegations about ownership of 360 cannot be
             squared with the terms of the Purchase Agreement....................................12

i

       a.   The Complaint, however, says nothing about this provision and erroneously describes motivations for Hammond and Pinson to discuss ownership ...................................................................................13

F.   The conversion claim should be dismissed ...............................................................14

1.   The Plaintiffs' allegations supporting their request for declaratory relief do not establish a case or controversy under §2201 and should be dismissed ......................................................................................................14

       a.   Legal standards for determining §2201 requests for relief............................14

       b.   The allegations of the Complaint defeat the claim that there is a dispute about ownership of 360 ......................................................................15

       c.   The terms of the Purchase Agreement signed by Pinson on behalf of 360 make Plaintiffs' allegations of ownership implausible at a minimum ...........................................................................................................15

VI.   Conclusion .....................................................................................................................16

# TABLE OF AUTHORITIES

<u>CASES</u>                                                                                                      Page(s)

*Aetna Cas. & Sur. Co. v. Sunshine Corp.*,
  74 F. 3d 685 (6th Cir. 1996) ...........................................................................................15

*Aronson v. Lewis*,
  473 A.2d 805 (Del. 1984) ..................................................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)..............................1, 2, 9, 14

*Askanase v. Fatjo*,
  130 F.3d 657 (5th Cir. 1997) .............................................................................................6

*Beard Research, Inc. v. Kates*,
  8 A.3d 573 (Del. Ch. 2010)................................................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).............................................1, 2

*Brooks v. United Dev. Funding III, L.P.*,
  Civil Action No. 4:20-cv-00150-O, 2020 U.S. Dist. LEXIS 197662,
  (N.D. Tex. Apr. 15, 2020)..................................................................................................7

*Campbell v. Wells Fargo Bank, N.A.*,
  781 F.2d 440, 442 (5th. Cir.), cert. denied, 476 U.S. 1159, 106 S. Ct. 2279,
  90 L. Ed. 2d 721 (1986) .....................................................................................................2

*Causey v. Sewell Cadillac-Chevrolet, Inc.*,
  394 F.3d 285 (5th Cir. 2004) .............................................................................................3

*Christopher v. Harbury*,
  536 U.S. 403, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002).................................................2

*Coca-Cola Bottling Co. v. Hollander*,
  885 So. 2d 125 (Ala. 2003)................................................................................................9

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) .........................................................................................3, 10

*CTS Corp. v. Dynamics Corp. of Am.*,
  481 U.S. 69, 107 S. Ct. 1637, 95 L. Ed. 2d 67 (1987)..................................................7

*Inclusive Cmtys. Project v. Lincoln Prop. Co.*,
  920 F.3d 890 (5th Cir. 2019) ...................................................................................1, 3

*In re Katrina Canal Breaches Litig.*,
  495 F.3d 191 (5th Cir. 2007) .........................................................................................3

*In re Tower Air, Inc.*,
  416 F.3d 229 (3rd Cir. 2005) .........................................................................................8

*Joseph C. Bamford & Young Min Ban v. Penfold, L.P., et al.*,
  No. 2019-0005-JTL, 2020 Del. Ch. LEXIS 79, 2020 WL 967942
  (Del. Ch. Feb. 28, 2020) ................................................................................................7

*Karnatcheva v. J.P. Morgan Chase Bank*,
  704 F.3d 545 (8th Cir. 2013) .......................................................................................15

*Lewis v. Fresne*,
  252 F.3d 352 (5th Cir. 2001) .........................................................................................2

*Mayo v. Hartford Life Ins. Co.*,
  354 F.3d 400 (5th Cir. 2004) .........................................................................................6

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007).....................................................................................................15

*Neitzke v. Williams*,
  490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).............................................1

*Newton v. Joseph*,
  2015 U.S. Dist. LEXIS 129123 (E.D. Tex. Aug. 11, 2015) ........................................15

*Norris v. Hurst Trust*,
  500 F.3d 454 (5th Cir. 2007) .........................................................................................3

*Papasan v. Allain*,
  478 U.S. 265, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986).............................................2

*PilePro, L.L.C. v. Heindl*,
  676 F. App'x 341 (5th Cir. 2017).................................................................................7

iv

*R2 Invs. LDC v. Phillips*,
  401 F.3d 638 (5th Cir. 2005) ................................................................................3

*Ritchie v. Rupe*,
  443 S.W. 3d 856 (Tex. 2014) ...............................................................................9

*Robbins v. Oklahoma*,
  519 F.3d 1242 (10th Cir. 2008) ...........................................................................2

*Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan*,
  883 F.2d 345 (5th Cir. 1989) ...............................................................................6

*United States ex rel. Grubbs v. Kanneganti*,
  565 F.3d 180 (5th Cir. 2009) ...............................................................................2

*VantagePoint Venture Partners 1996 v. Examen, Inc.*,
  871 A.2d 1108 (Del. 2005) ...................................................................................7

RULES

Federal Rule of Civil Procedure 8(a)(2) ....................................................................2

Federal Rule of Civil Procedure 8(d) ........................................................................1

Federal Rule of Civil Procedure 12(b)(6) ..................................................................1

Federal Rule of Evidence 201 ...................................................................................3

STATUTES

22 U.S.C. § 2201 .......................................................................................................1

Paul Hammond ("Hammond" or "Defendant"), submits this brief in support of his Motion to Dismiss ("Motion"). His Motion applies to all claims in Plaintiff's Original Complaint ("Complaint") [Doc. 1]. As discussed more fully below, the Complaint is deficient under the pleading standards of Fed. R.Civ.P.8(d) and 12(b)(6) and the requirements of 22 U.S.C. §2201.

## I.    Background.

Plaintiff 360 Security Partners ("360") owns a number of canine–based security companies. These companies "provide training and academies for canines who are used for a variety of security services, including detection of explosives, firearms, and drugs." [Complaint ¶ 10] Plaintiff Jason Pinson ("Pinson") is a member and manager of 360. [*Id.* ¶ 11] 360 purchased these companies August 2020. [*Id.*] Hammond was the chief executive officer of 360 from the time 360 purchased the canine-based security companies in August 2020. [*Id.* ¶ 12]

360 and Pinson filed this action against Hammond on December 1, 2021. The plaintiffs have two causes of action: breach of fiduciary duties and conversion. The plaintiffs also seek a declaratory judgment that Pinson is the sole owner of 360.

## II.    Legal Standard for Deciding a Motion to Dismiss.

In *Inclusive Cmtys. Project v. Lincoln Prop. Co.*, 920 F.3d 890 (5th Cir. 2019), the Court set out the legal considerations in deciding a motion to dismiss under Rule 12(b)(6):

> Rule 12(b)(6) authorizes the filing of motions to dismiss asserting, as a defense, a plaintiff's "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). Thus, claims may be dismissed under Rule 12(b)(6) "on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989). Dismissal under Rule 12(b)(6) also is warranted if the complaint does not contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Where the well-pleaded facts of a complaint do not permit a court to

infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - "that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678 (quoting Fed. Rule Civ. P. 8(a)(2)). Thus, a complaint's allegations "must make relief plausible, not merely conceivable, when taken as true." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).").

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Factual allegations that are "merely consistent with a defendant's liability, stop short of the line between possibility and plausibility of entitlement to relief," and thus are inadequate. Id. (internal quotations omitted). Accordingly, the requisite facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (emphasis added). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted). *See also Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (degree of required specificity depends on context, i.e., the type of claim at issue).

In evaluating motions to dismiss filed under Rule 12(b)(6), the court "must accept all well-pleaded facts as true, and . . . view them in the light most favorable to the plaintiff." *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th. Cir.), *cert. denied*, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986). Further, "[a]ll questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor." *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001). On the other hand, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986); see also Iqbal, 556 U.S. at 678 ("tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); see also *Christopher v. Harbury*, 536 U.S. 403, 416, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002) (elements of a plaintiff's claim(s) "must be addressed by allegations in the complaint sufficient to give fair notice to a defendant").

In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal

> Rule of Evidence 201. *See Norris v. Hurst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007); *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 640 n. 2 (5th Cir. 2005). When a defendant attaches documents to its motion that are referenced in the complaint and are central to the plaintiff's claims, however, the court can also properly consider those documents. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).

*Inclusive Cmtys. Project v. Lincoln Prop. Co*., 920 F.3d at 899-900.

## III.    Hammond's Documents for Consideration in his Motion.

Hammond has an Appendix containing two documents referenced in the Complaint. These documents are central to the Plaintiffs' claims.  In Paragraph 36 of the Complaint the Plaintiffs reference an "August 17, 2020 Purchase Agreement" (hereafter "Purchase Agreement") and seek a declaration that Plaintiff Pinson is the "sole member, manager, and equityholder pursuant to [that agreement]...." Plaintiffs did not include the Purchase Agreement with the Complaint. The Appendix includes redacted portions of the Purchase Agreement referenced in this brief.

The Appendix also contains an October 29, 2021 email from Hammond to Pinson, which is referenced by Plaintiffs in Paragraph 21 of the Complaint.  The Plaintiffs rely on this email in alleging that Hammond "wanted to hold 360 hostage unless Pinson would award him equity." Plaintiffs allege this hostage scheme was Hammond's motivation for acts of mismanagement alleged in the Complaint. Plaintiffs did not include this email with the Complaint.

## IV.    Summary of Argument.

Plaintiffs allege that Hammond committed acts of mismanagement and insubordination and also failed to provide access to records of the company when requested. Hammond denies the

allegations, but the allegations are implausible. Hammond was an employee at will and could have been terminated at any time for these acts, which were known to the Plaintiffs at the time they were allegedly occurring. It is implausible that Plaintiffs would have allowed these alleged acts to continue.

Plaintiffs also allege that Hammond's acts were taken in an attempt to coerce 360 and its owner Jason Pinson into providing Hammond an ownership interest in 360. This scheme is implausible. Under this theory, Hammond deliberately damaged 360, even though he knew Pinson was considering making him an owner depending on his performance and he also knew that he was an employee at will.

Plaintiffs' allegations of a scheme are further undermined (for purpose of the plausibility analysis) by the terms of a purchase agreement between Pinson, 360 and Hammond in which Hammond sold to 360 his interest in two companies that became part of 360. Plaintiffs reference the purchase agreement but ignore the terms in claiming that Hammond wanted but did not have an ownership interest. Plaintiffs also rely on an email from Hammond as showing the alleged scheme, but that allegation is implausible based on a review of the contents of the email.

Plaintiff's claims for conversion are due to be dismissed because they failed to allege with particularity the property allegedly converted. Moreover, Plaintiffs' allegation of conversion related to Hammond's alleged claims of ownership in 360 do not state a claim for conversion. A statement of opinion about ownership does not amount to conversion.

Plaintiff's allegations for declaratory relief are self-defeating. The allegations that Hammond repeatedly attempted to obtain an interest in 360 negate the Plaintiffs' request for declaratory relief declaring that Hammond does not own 360. Moreover, the Plaintiffs have

4

ignored the terms of the August 17, 2020, purchase agreement that provides Hammond an ownership interest.

## V.    The Plaintiffs fail to allege a plausible claim for breach of fiduciary duty, and their claims should be dismissed.

### A.    Plaintiffs' allegations about breach of fiduciary duties.

Plaintiffs identify the duty of care in their breach of fiduciary duties claim in Paragraph 25:

> Defendant, as 360's chief executive officer, owed Plaintiffs a fiduciary duty of care,loyalty, and good faith, which included an obligation to exercise good business judgment, to act prudently on 360's behalf, to discharge his actions in good faith, to act in 360's best interest, and to put 360's interests before his own.

Plaintiffs allege in Paragraph 26 that Hammond breached those duties by:

> (i) failing to follow 360's equityholder's instructions, (ii) failing to abide by 360's board of directors' resolutions, (iii) permitting unqualified employees to manage and oversee 360's financials, (iv) failing to institute basic accounting and financial oversight, (v) demanding equity in 360 in order to continue operating it as a business, (vi) refusing to provide Pinson, the board of directors, and others access to 360's critical financial and operational information, and (vii) misrepresenting to others 360's ownership structure.

In Paragraph 27 Plaintiffs further allege a breach of fiduciary duties:

> Defendant breached those duties by putting his own interests first through seeking to maintain complete control over 360 and its assets to the exclusion of its equityholder and board of directors and refusing to operate 360 in a prudent manner and consistent with the board of directors' resolutions, all the while demanding equity in the company.

The facts alleged to support these breach of fiduciary duties are set out in Paragraphs 13 – 23 of the Complaint -- telling unidentified clients and vendors that Hammond is 360's owner and telling unidentified categories of persons that Pinson was a provider of investor money [Complaint,

¶ 13]; appointing an unqualified chief financial officer, which resulted in accounting and financial errors [*id.*, ¶ 15]; allowing employees to use 360's credit cards in an uncontrolled manner and refusing to implement cost or expense tracking [*id.*]; check cashing irregularities by Hammond "and/or various employees" [*id.*, ¶ 16]; refusing to provide access to 360's bank accounts [*id.*]; preventing a newly hired controller from fulfilling her duties and blocking her access to needed company financials [*id.*, ¶ 17]; causing 360 to miss payrolls for employees and payments of contractor invoices [*id.*, ¶ 18]; disobeying a directive not to enter into contracts for the company [*id.*, ¶¶ 19 – 20]; and refusing to build a short-term budget [*id.*, ¶ 22].

After this recitation of mismanagement, Plaintiffs allege that these actions were a deliberate part of a scheme:

> Plaintiffs thus realized that Defendant was deliberately mismanaging and withholding critical information about 360 in an attempt to coerce—or perhaps extort—360's owner to award them [sic] equity. That improper conduct caused Plaintiffs to file this lawsuit to hold Defendant liable for his actions.

[*Id.* ¶ 23.]

According to the Plaintiffs, this "scheme" was evident in correspondence dated October 29, 2021 in which Hammond demanded that 360 fully liquidate or award him 40% of the company. [*Id.* ¶ 21]

### B.    Applicable substantive law concerning breach of fiduciary duty.

"[A] federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state." *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004). In Texas, "the law of the incorporating state governs a corporation's internal affairs." *Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 354 (5th Cir. 1989); *Askanase v. Fatjo*, 130 F.3d 657, 670 (5th Cir. 1997) ("Federal courts sitting in Texas apply the law of the state of

6

incorporation when a corporation's internal affairs are implicated."). Claims of breach of fiduciary duties implicate the internal affairs of an entity. *See PilePro, L.L.C. v. Heindl*, 676 F. App'x 341 (5th Cir. 2017) (holding Delaware law applies to Delaware corporation's breach of fiduciary duty claims). *See also VantagePoint Venture Partners 1996 v. Examen, Inc*., 871 A.2d 1108, 1113 (Del. 2005) ("It is now well established that only the law of the state of incorporation governs and determines issues relating to a corporation's internal affairs.") (citing *CTS Corp. v. Dynamics Corp. of Am*., 481 U.S. 69, 89-93, 107 S. Ct. 1637, 95 L. Ed. 2d 67 (1987)); *Brooks v. United Dev. Funding III, L.P.*, Civil Action No. 4:20-cv-00150-O, 2020 U.S. Dist. LEXIS 197662, at *89-91 (N.D. Tex. Apr. 15, 2020) (collecting these and other cases on the application of the internal affairs doctrine).

As alleged in the Complaint, 360 is a Delaware limited liability company. [Complaint, ¶ 4] Accordingly, under the internal affairs doctrine, Delaware law governs the Plaintiffs' breach of fiduciary duties claims.

Under Delaware law, for a breach of duty claim, a plaintiff is required to allege "(1) that a fiduciary duty existed and (2) that the defendant breached that duty." *Brooks v. United Dev. Funding III, L.P.,* 020 U.S. Dist. LEXIS 197662, at *91 (N.D. Tex. Apr. 15, 2020) (quoting *Joseph C. Bamford & Young Min Ban v. Penfold, L.P*., et al., No. 2019-0005-JTL, 2020 Del. Ch. LEXIS 79, 2020 WL 967942, at *8 (Del. Ch. Feb. 28, 2020). Typically, breaches of fiduciary duty involve a fraudulent or wrongful act such as misappropriation of property for personal benefit or usurping the employer's business opportunities. *See Beard Research, Inc. v. Kates*, 8 A.3d 573, 602 (Del. Ch. 2010). In Delaware, claims for breaches of fiduciary duty can also be based on day-to-day business actions and decisions, but such claims run headlong into the business judgment rule. The

7

business judgment rule is a presumption that decisionmakers in a company "act in good faith  on

an informed basis, honestly believing that their actions are in the best interests of the company".

*See In re Tower Air, Inc.*, 416 F.3d 229, 238 (3rd Cir. 2005) (citing *Aronson v. Lewis*, 473 A.2d

805, 812 (Del. 1984)).

C.     **The Plaintiffs claim that Hammond used bad management practices and decisions in a deliberate attempt to force the Plaintiffs to give him an ownership interest in 360.**

The Plaintiffs have alleged a series of mostly discrete  bad management practices and

withholding of information over an undefined period. They make no allegations that Hammond

engaged in any fraud  or misappropriation of 360's property for his personal pecuniary benefit or

to benefit a competitor. For example, while they allege Hammond withheld information or denied

the Plaintiffs access to certain records,  the allegations are that  Hammond was refusing requests

from the Plaintiffs for this information, not fabricating information in response to the requests.  [*cf.*

Complaint, ¶ 26] Similarly, the Plaintiffs attributed Hammond's  unchecked expense accounting

and financial and accounting errors to decisions Hammond made about the personnel involved in

these decisions and about day-to- day operating procedures. Plaintiffs do not allege that Hammond

took money or falsified the books and records of 360. In addition, concerning the allegations about

missed payrolls and unpaid contractor invoices [Complaint ¶ 18], the Plaintiffs attribute these

events not to misappropriation or fraud, but to "lack of [leadership]"  and "refusal to provide access

to company information.…" [*Id.*]

The Plaintiffs allege that these bad practices and management decisions were part of a

scheme to "coerce—or perhaps extort—360's owner to award them [sic] equity."  [Complaint,

¶ 23] According to the Plaintiffs, "[t]hat improper conduct caused Plaintiffs to file this lawsuit to

hold Defendant liable for his actions." [Id.] While Hammond denies the Plaintiffs' allegations of mismanagement and withholding information, the focus of his Motion is the alleged intentional mismanagement as part of a scheme to obtain ownership in 360.

      D.     **The allegations of breach of fiduciary duty are implausible.**

As the Supreme Court stated in *Ashcroft v. Iqbal*, "[d]etermining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.,* 556 U.S. at 679 (internal citations omitted).

      1.     **The alleged acts of mismanagement are not plausibly breaches of fiduciary duty because Hammond was an at-will employee.**

Pinson claims to own 360 as a single member. Hammond was 360's chief executive officer. The Plaintiffs do not allege, and could not allege, that Hammond had a fixed employment contract with 360. Alabama, where Hammond worked and lived, and Texas are at-will employment states. *See e.g. Coca-Cola Bottling Co. v. Hollander*, 885 So. 2d 125, 129 (Ala. 2003); *Ritchie v. Rupe,* 443 S.W. 3d 856,885 (Tex. 2014). Accordingly, Pinson and 360 could have terminated Hammond's employment at any time and for any reason – upon the first or any act of mismanagement or insubordination. Although the Complaint does not allege many critical dates, collectively Pinson and 360 retained Hammond for 15 months despite all the alleged acts of mismanagement and disobedience, all of which were known to Plaintiffs at the time by their own allegations. This is an implausible circumstance. Under the facts as alleged, Pinson either irrationally acquiesced in all of these alleged misdeeds or rationally did not find them of sufficient

importance to terminate Hammond.[1] The most plausible inference is that these alleged acts were insignificant and did not rise to the level of a breach of fiduciary duty.

### 2.    The scheme is implausible.

According to the Plaintiffs' allegations, Paul Hammond in his obsession to become an owner of 360, and despite Pinson's willingness to discuss ownership for Hammond depending on his performance, devised a scheme to financially injure the company that he worked for and wanted to own in order to leverage Pinson into providing him ownership. As part of the scheme, he hired an inept chief financial officer, failed to implement proper accounting and financial controls, and disobeyed orders to provide information to Pinson, to provide access to financial records, and to stop entering into contracts for the company. All the while being an at-will employee. The implausibility of this "scheme" is self-evident.

### E.    Hammond's Documents.

In a motion to dismiss, defendant's documents assist in establishing the basis of the suit and whether a claim has been stated. *Collins v. Morgan Stanley*, 224 F.3d at 499.    Apart from these documents, as discussed above, the Plaintiffs' claims for breach of fiduciary duty are implausible. Nevertheless, the documents submitted by Hammond additionally show that the Plaintiffs' breach of fiduciary duty theory is implausible.

### 1.    The October 29 email from Hammond to Pinson does not support the Plaintiffs' allegations about the communication or Hammond's alleged scheme to obtain ownership.

In the Complaint, Plaintiffs make much of an October 29, 2021 email communication from Hammond that Plaintiffs allege shows Hammond's scheme to obtain an ownership interest by

---

[1] 360 terminated Hammond the day after it filed this action.

damaging the company.  Plaintiffs do not include the communication as an attachment to their Complaint nor did they quote directly from it.  The Plaintiffs conclude that the communication meant "if Pinson wanted his company to be a going concern, he had to transfer the majority of his equity."  [Complaint ¶ 21]

Hammond has included in his Appendix a copy of the October 29, 2021 communication. In that communication, Hammond attaches the resignation email of Enrique Sierra and offers observations on 360's business going forward.[2]  Hammond does not threaten 360. He does not threaten to quit. He does not threaten to ruin the business. Nothing in the email suggests a scheme to ruin the business by employing Sierra.  While Hammond states that the business is in a "critical point in time," he attributes that to a need for working capital to continue to expand the business. Hammond prefaces remarks about options for the business with "the decision is ultimately yours to make. But my suggested paths forward…." [Appx 20]

The October 29, 2021 communication does not express an intent to hold 360 hostage "unless Pinson would award him equity." [*Cf.* Complaint ¶ 21] To the contrary, it expresses that Hammond had recently learned that "despite an agreement to the contrary that all relevant parties knew and understood well, that you, our Partner, and chief investor, without our knowledge, chose to view our roles as akin to 'Asset Managers' and not Partners." [Appx 0020] After presenting an option of selling the business or going forward with a "proper corporate structure," which included a statement that first priority is Pinson's capital, Hammond closes with "[t]his message should be

---

[2] Sierra's email is included for completeness because it was attached to and referenced in Hammond's October 29, 2021 email. Sierra's email was not referenced in the Complaint.

11

perceived as passively trying to find a solution at a challenging time for all, as we cannot continue as is, or without a mutual Partner agreement in place." [Appx 0021]

The parties can debate the nuances of Hammond's communication, but no reasonable reading of the communication makes it an ultimatum for ownership as alleged in the Complaint. Moreover, the option to "liquidate the company" in the email is in fact a proposal for selling the company and paying out ownership interests. [Appx 0020] If Hammond wanted a payout from a sale of 360, it is implausible that he would have hatched a scheme to financially damage 360.

### 2. Plaintiffs' material allegations about ownership of 360 cannot be squared with the terms of the Purchase Agreement.

Although omitted from the allegations of the Complaint, 360 purchased two of its canine-based security companies from Hammond and others. The Purchase Agreement states that Hammond owned a specified minority interest in each of the companies. [Appx 0002 ("Recitals"); and Appx 0009 ("Schedule 1, Assigned Interests")]. The Purchase Agreement also recites that Hammond was the president of the two companies in which he owned an interest. [Appx 0004]. And as alleged in the Complaint, which was filed December 1, 2021, Hammond "has served as 360's chief executive officer since its purchase approximately fifteen months ago." [Complaint, ¶ 12] Accordingly, Hammond transitioned from president of two of the purchased companies in which he owned an interest to 360's chief executive officer over all the companies purchased by 360.

As reflected in the Purchase Agreement, Hammond transferred  his ownership interest to 360 in exchange for an ownership interest in 360. The Purchase Agreement provides that Hammond's consideration for the sale of his ownership interest was:

(d)    An ownership interest in the Buyer [360] issued to Hammond in such amount as shall be agreed to by Hammond and the Buyer prior to the Closing Date in consideration for the transfer of his ownership interest in the Companies.

[Appx 0005,0006]

      a.    **The Complaint, however, says nothing about this provision and erroneously describes motivations for Hammond and Pinson to discuss ownership.**

In the Complaint, Plaintiffs allege:

13.    Pinson, however, wanted to motivate Hammond to work hard and grow 360, so he at various times engaged in conversations with Defendant regarding some form of equity ownership.  But the parties were never able to agree on what the Defendant's equity structure would entail.  Over the last few months, however, it has become obvious that Hammond greatly desires to be an owner of 360.

\*\*\*\*\*\*

14.    Hammond was obsessed with obtaining ownership of 360 from the beginning.  As time went on, he became more and more angry that he did not have any equity in 360 and, as a result, his conduct worsened.

[Complaint, ¶ ¶ 13 – 14]

Plaintiffs further allege that "of course, Hammond is well aware that he does not own any equity in 360 and is simply an officer."  [*Id*. ¶ 13]

Plaintiffs allege nothing in the Complaint concerning 360's agreement in the Purchase Agreement, which was signed by Pinson as a member of 360, to purchase Hammond's interest in two of the companies for a payment consisting of an ownership interest in 360.  Hammond was not for some mysterious reason "obsessed" with an ownership interest in 360 "from the beginning" or in the fever of this obsession falsely claiming ownership in 360.  Pinson did not merely engage in discussions with Hammond about "a form of equity ownership" with Hammond "at various

13

times" because Pinson "wanted to motivate Hammond to work hard and grow 360." Plaintiffs know better - because of the Purchase Agreement between 360 and Hammond, which Pinson signed.

Hammond's right to an ownership interest as expressed in the Purchase Agreement also shows the implausibility of the scheme alleged by the Plaintiffs. It defies common sense for Hammond to intentionally damage a company in which he had an ownership interest.

F.    **The conversion claim should be dismissed.**

Plaintiffs allege no additional facts in support of their conversion claim. The Plaintiffs' allegations of conversion are conclusory. Plaintiffs do not identify the property they claim was converted except to label it as "assets." They further claim conversion for Hammond's alleged failure "to provide access, control, or transparency with respect to 360's business, including the use and disposition of 360's property." [Complaint, ¶ 32] These allegations fail to contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678. Plaintiffs also allege that "Defendant wrongfully claimed ownership of 360 to the exclusion of its actual owner.…" [*Id.*] The Court should dismiss this allegation for the additional reason that a conversion claim cannot result from an expression of opinion of ownership. A statement expressing an opinion or claim about ownership of property is not exercising control over that property.

1.    **The Plaintiffs' allegations supporting their request for declaratory relief do not establish a case or controversy under §2201 and should be dismissed.**

a.    **Legal standard for determining §2201 requests for relief.**

A declaratory judgment action is proper when the judgment will (1) clarify and settle legal relations at issue and (2) provide relief from the uncertainty, insecurity and controversy giving rise

14

to the action.  *See Newton v. Joseph*, 2015 U.S. Dist. LEXIS 129123 (E.D. Tex. Aug. 11, 2015) (citing *Aetna Cas. & Sur. Co. v. Sunshine Corp.,* 74 F. 3d 685, 687 (6th Cir.  1996)).  A declaratory judgment is not available to resolve issues when there is no case or controversy.  *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 126-27 (2007).  The complaint for declaratory relief must meet the Rule 8 (a) pleading standards. *Karnatcheva v.  J.P.  Morgan Chase Bank*, 704 F.3d 545, 547 (8th Cir. 2013).

       **b.**    **The allegations of the Complaint defeat the claim that there is a dispute about ownership of 360.**

Plaintiffs allege that "[a]n actual existing and bona fide controversy exists between plaintiffs and defendant concerning 360's ownership."  [Complaint, ¶ 35].  Yet Plaintiffs claim that Hammond did not own 360 but schemed to <u>obtain</u> ownership. Plaintiffs' entire narrative is about Hammond's failed efforts to obtain ownership in 360. The allegations are self-defeating. They sweep away any claim for  relief to declare Pinson as 360's sole owner, or more accurately, to declare that Hammond is not an owner.

       **c.**    **The terms of the Purchase Agreement signed by Pinson on behalf of 360 make Plaintiffs' allegations of ownership implausible at a minimum.**

Pinson on behalf of 360 signed an agreement with Hammond to purchase Hammond's ownership interest in certain of the canine companies. That fact, at a minimum, renders Plaintiffs' allegations implausible. Plaintiffs have alleged that Hammond never had an ownership interest in 360 yet seek a declaration that  Pinson is the sole owner of 360 under the Purchase Agreement while ignoring  the plain language of that agreement. While the parties may debate the purchase provision, that is not how the Plaintiffs have framed their Complaint.

**VI.    Conclusion.**

For the reasons discussed above, Defendant Paul Hammond respectfully submits that Plaintiffs' action is due to be dismissed.

Respectfully submitted,

*/s/ Jeffrey E. Holmes*
**JEFFREY E. HOLMES (asb-6330-171j)**
*(PHV Application Pending)*
**Counsel for Defendant Paul Hammond**

**OF COUNSEL:**
BOLES HOLMES WHITE LLC
1929 3rd Avenue North, Suite 500
Birmingham, Alabama 35203
Phone:  (205) 403-5713
Fax:  (205) 847-1285
E-mail:  jholmes@bhw.law

David A. Buono, II
SAVRICK SCHUMANN JOHNSON MCGARR
 KAMINSKI & SHIRLEY, LLP
State Bar No. 24001806
4621 Ross Avenue, Suite 300
Dallas, Texas 75204
Phone: (214) 368-1515
Fax: (214) 292-9647
The Overlook at Gaines Ranch
4330 Gaines Ranch Loop, Suite 150
Austin, Texas 78735
Phone: (512) 347-1604
Fax: (512) 347-1674
E-mail:  david@ssjmlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 25, 2022, the foregoing *Brief in Support of Motion to Dismiss* has been electronically filed with the Clerk of Court using the ECF system. I certify that the document was served on all known counsel of record electronically as authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Jeffrey E. Holmes*
**JEFFREY E. HOLMES (asb-6330-171j)**
*(PHV Application Pending)*

17