UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| 360 SECURITY PARTNERS, LLC, and JASON PINSON, § § § | |
| Plaintiffs, § § | |
| v. § | CIVIL ACTION NO. 3:21-CV-3004-B |
| § | |
| PAUL HAMMOND, § § § | |
| Defendant. § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Paul Hammond (Hammond)'s Motion to Dismiss (Doc. 8). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Hammond's motion.

### I.

### BACKGROUND[1]

This is a dispute between a company, the company's owner, and the company's former chief executive officer (CEO). Plaintiff 360 Security Partners, LLC (360)[2] owns companies that provide canine security training and academies. Doc. 1, Compl., ¶ 10. Plaintiff Jason Pinson (Pinson) is 360's "sole member and manager" and only equityholder. *Id.* ¶ 11. The dogs 360's companies train "are used for a variety of security services, including detection of explosives, firearms, and drugs . . . in various settings, including in public gatherings . . . and . . . in law enforcement activities." *Id.* 360

---

[1] This factual statement is derived from Plaintiffs' complaint (Doc. 1) unless otherwise noted.

[2] 360 is a limited liability company formed in Delaware with its principal place of business in Irving, Texas. Doc. 1, Compl., ¶ 4.

-1-

purchased the canine security companies about fifteen months ago, at which time Hammond became 360's CEO. *Id.* ¶ 12. Before the acquisition and at times after, Pinson discussed with Hammond an equity ownership arrangement for Hammond; however, they were unable to agree on the equity structure. *Id.* ¶ 13. Hammond thus "does not have any ownership in 360." *Id.* ¶ 12.

Plaintiffs contend that Hammond "desire[d] to be an owner of 360" and that Hammond would tell "clients and vendors . . . [he] [wa]s 360's owner" while portraying Pinson as "nothing more than the provider of 'investor money.'" *Id.* ¶ 13. Plaintiffs allege that Hammond unilaterally appointed as chief financial officer (CFO) Enrique Sierra (Sierra) who, according to Plaintiffs, had no financial education or background, which resulted in financial mismanagement and unaccounted financial charges. *Id.* ¶¶ 15–16. Plaintiffs further allege that Hammond "refus[ed] to provide Pinson access to 360's bank accounts, which ensured that [Hammond] maintained complete control over all company assets and funds." *Id.* ¶ 16. As a result, Pinson created a four-person Board of Directors to manage 360, "oversee [Hammond]'s activities," and exclusively contract on 360's behalf. *Id.* ¶ 19. Plaintiffs state that Hammond "refused to abide by the Board's resolutions and continued to enter contracts for 360." *Id.* ¶ 20. These "deliberately destructive decision[s]," Plaintiffs aver, "[d]emonstrated [Hammond's] true intentions . . . to hold 360 hostage unless Pinson would award him equity." *Id.* ¶¶ 15, 21.

Plaintiffs filed suit against Hammond for breach of fiduciary duties and conversion. *Id.* ¶¶ 30–36. Plaintiffs also seek a declaratory judgment against Hammond regarding an alleged ownership interest dispute in 360. *Id.* ¶¶ 24–29. On March 25, 2022, Hammond filed a Motion to Dismiss all of Plaintiffs' claims in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion is ripe for review and the Court considers it below.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation marks and alterations omitted).

## III.

## ANALYSIS

Below, the Court first explains why it declines to consider an August 17, 2020 Purchase Agreement (the Purchase Agreement) and October 29, 2021 e-mail chain between Hammond and Pinson (the E-mail Chain)—both attached to Hammond's motion to dismiss—in deciding this motion. Turning to the sufficiency of Plaintiffs' pleadings, the Court finds that Plaintiffs have not adequately pleaded an actual case or controversy for the declaratory judgment claim. The Court next finds that Plaintiffs have not plausibly pleaded a conversion claim. Finally, the Court finds that Plaintiffs have plausibly pleaded their breach of fiduciary duty claim. So, the Court **GRANTS IN PART** and **DENIES IN PART** Hammond's motion, dismissing the declaratory judgment claim for want of subject-matter jurisdiction, dismissing the conversion claims for failure to state a claim, and declining to dismiss the breach of fiduciary duty claim.

A.  *The Court Declines to Consider the Attachments to Hammond's Motion*

In deciding a motion under Rule 12(b)(6), the Court is generally limited to the allegations in the complaint but may also consider documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the plaintiff's claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). "[A] document tends to be central when it is necessary to establish an element of a plaintiff's claim." *Dawes v. City of Dall.*, 2020 WL 3603090, at *2 (N.D. Tex. July 2, 2020) (citing *Hong Kong Aroma Star Int'l LLC v. Elta MD Inc.*, 2019 WL 2357529, at *3 (N.D. Tex. June 4, 2019)). "[I]n assessing whether a document is central, a court should [also] consider whether the plaintiff objects to the inclusion of the attached document." *Id.*

Here, Hammond asks the Court to look beyond the pleadings and consider the Purchase Agreement and the E-mail Chain in deciding this motion. Doc. 9, Def.'s Br., 3. Hammond argues that both are referenced in Plaintiffs' pleadings and central to their claims. *Id.* Plaintiffs do not object to the Court's review of the Purchase Agreement in deciding this motion, *see* Doc. 17, Pls.' Resp., 1–12, but do contend that the E-mail Chain is not central to their claims and should not be considered at the motion-to-dismiss stage. Doc. 17, Pls.' Resp., 5.

The Court finds that neither the Purchase Agreement nor the E-mail Chain is central to Plaintiffs' claims. Specifically, the Purchase Agreement is not central to Plaintiffs' claims because it memorializes the transaction in which 360 and Pinson purchased Hammond's previous company, Doc. 10, Def.'s App., 2, 6–7, but has no impact on whether Hammond later purported to own 360, committed conversion, or breached a fiduciary duty to 360. *Cf. Dawes*, 2020 WL 3603090, at * 3 (holding that the Court could not consider body camera footage because it was unnecessary to establish an element of the plaintiff's claims). Similarly, the E-mail Chain, which Hammond claims gives context to Plaintiffs' allegation that Hammond schemed to obtain equity in 360, is not central to any of the claims, even if it might make them more or less plausible. *Cf. id.* For these reasons, the Court considers only the allegations in Plaintiffs' complaint in deciding this motion. *See Spivey*, 197 F.3d at 774.

B.  *The Court Dismisses Plaintiffs' Declaratory Judgment Claim for Lack of Subject-Matter Jurisdiction*

The Court now turns to Hammond's challenge to Plaintiffs' request for a declaratory judgment that Pinson is 360's sole owner.

A district court has broad discretion to grant or dismiss a request for declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. *Regus Mgmt. Grp., LLC, v. Int'l Bus.*

*Mach. Corp*, 2008 WL 2434245, at *4–5 (N.D. Tex. June 17, 2008)(noting that the Declaratory Judgment Act is "an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant" (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995))). "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). District courts engage in a three-step analysis when determining whether a declaratory judgment action should proceed. *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). First, the court asks whether it has subject-matter jurisdiction because an "'actual controversy' exists between the parties." *Id.* Second, the "court must resolve whether it has the 'authority' to grant declaratory relief in the case presented." *Id.* Third, the court examines "how to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Id.*

Plaintiffs allege that there is a "real and justiciable controversy regarding 360's ownership," so they seek a declaratory judgment that Pinson "is the sole member, manager, and equityholder" of 360. Doc. 1, Compl., ¶ 35. Plaintiffs assert that Hammond wrongfully informed third parties that he had an ownership interest in 360, giving rise to this controversy. *Id.* ¶¶ 2, 35.

Hammond moves to dismiss the declaratory relief claim because "there is no case or controversy" and the Court therefore lacks subject-matter jurisdiction. Doc. 9, Def.'s Br., ¶ 15. Hammond claims that "Plaintiffs plainly and unequivocally allege that Hammond is not and was never an owner of 360." Doc. 20, Def.'s Reply, 7.

Plaintiffs respond by arguing that their complaint demonstrates "that Hammond either believes himself to be, or intentionally misrepresented himself to be, an owner of 360" and that

"Hammond's own arguments demonstrate that a valid, bona fide controversy exists." Doc. 17, Pls.' Resp., 10 (citing Doc. 1, Compl. ¶¶ 13, 21, 35).

The Court finds that Plaintiffs' pleadings, taken as true, show no real and justiciable controversy concerning 360's ownership. *See Golden v. Zwickler*, 394 U.S. 103, 108 (1969) ("[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgement."). Plaintiffs plead that after 360 purchased the canine security companies Pinson "engaged in conversations with [Hammond] regarding some form of equity ownership. But the parties were never able to agree on what [Hammond]'s equity structure would entail." Doc. 1, Compl., ¶ 13. Furthermore, Plaintiffs plead that "Hammond is well aware that he does not own any equity in 360 and is simply an officer," that "Hammond was obsessed with obtaining ownership of 360 from the beginning," and that Hammond "wanted to hold 360 hostage unless Pinson would award him equity." *Id.* ¶¶ 13–14, 21. Plaintiffs therefore plead Hammond's desire or intent to *obtain* ownership in 360, not claims of actual ownership. *See id.* ¶¶ 13–15.

Further, while Plaintiffs state that Hammond portrayed himself to third parties as 360's owner, *id.* ¶ 13, this does not establish an actual dispute between Plaintiffs and Hammond as to the true owner of the company. Even if this Court were to grant Plaintiffs the declaratory judgment they seek, it would not prevent Hammond from portraying himself as the owner to third parties; therefore, a declaratory judgment is an improper vehicle to remedy the allegations made in Plaintiffs' complaint. Lastly, there is nothing in the complaint suggesting that Hammond is still making such claims.

Because the pleadings show no actual controversy between the parties about the ownership of 360, the Court lacks subject-matter jurisdiction over the declaratory judgement claim. *See Orix*, 212 F.3d at 895. The Court therefore **DISMISSES WITHOUT PREJUDICE** Plaintiffs' declaratory judgment claim.

C.  *The Court Dismisses Plaintiffs' Conversion Claim As Inadequately Pleaded*

Texas law[3] defines conversion as the "unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights[.]" *Hyde & Hyde, Inc. v. Mount Franklin Foods, L.L.C.*, 523 F. App'x 301, 304 (5th Cir. 2013) (quoting *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971)). "The plaintiff must prove that: (1) he legally possessed the property or was entitled to it; (2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff; (3) the plaintiff

---

[3] Choice of law is a threshold inquiry in diversity cases. *See Faloona by Fredrickson v. Hustler Mag., Inc.*, 799 F.2d 1000, 1003 (5th Cir. 1986) ("At the threshold in this diversity jurisdiction case, we must determine applicable law by applying Texas choice-of-law rubrics." (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941))). When sitting in diversity jurisdiction, a federal court must apply the choice-of-law rules of the forum state—in this case, Texas. *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005) (citing *Klaxon*, 313 U.S. at 496).

Where the potentially applicable laws are inconsistent, Texas courts decide choice-of-law issues by using the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677–78 (Tex. 1990). Courts apply the test issue-by-issue. *See Webb v. Rodgers Mach. Mfg. Co.*, 750 F.2d 368, 374 n.10 (5th Cir. 1985). Thus, the Court analyzes each issue individually. *See Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 204 (Tex. 2000) ("We leave open the question of which state's law the trial court should apply to the particular substantive issues to be resolved below.").

Here, neither party has argued which rule of law governs Plaintiffs' conversion claims. But Plaintiffs' response to Defendant's Motion to Dismiss cites Texas case law on this issue and Hammond did not challenge Plaintiffs' application of Texas law. Doc. 17, Pls.' Resp., 9; *see* Doc. 20, Def.'s Reply, 6–7 (addressing the conversion claim but citing no case law). Independently, the Court considers that the complaint does not state where the bank accounts or other allegedly converted assets were located, but does plead that 360 has its principal place of business in Texas. *See* Doc. 1, Compl., ¶¶ 4, 15–21, 30–33. So, for now, the Court analyzes Plaintiffs' conversion claims under Texas law. However, the Court reserves the right to revisit the question of which state's law should apply on summary judgment or at trial.

demanded the property's return; and (4) the defendant refused." *Id.* (quoting *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009)).

Plaintiffs allege conversion based on (1) Hammond's and others' improper check management, credit card use, and contract management; (2) Hammond denying access to 360's bank accounts; and (3) Hammond telling third parties that he was 360's owner. The Court considers whether Plaintiffs have adequately pleaded any of these bases.

### 1. Plaintiffs' Allegations of Conversion Through Improper Check Management, Credit Card Use, and Contract Management

Plaintiffs allege Hammond committed conversion because "[Hammond] and/or various employees, were writing checks to cash that were not included or otherwise accounted for in 360's financials." Doc. 1, Compl., ¶ 16; Doc. 17, Pls.' Resp., 9. Also, Plaintiffs claim "Hammond refused to abide by the Board's resolutions [which provided that only the Board could enter into any contract on 360's behalf] and continued to enter contracts for 360." Doc. 1, Compl., ¶¶ 19–20; Doc. 17, Pls.' Resp., 9. Plaintiffs further argue that Hammond's appointment of Sierra "led to rampant accounting and financial errors that harmed Plaintiff . . . . [I]t was common for checks to be issued to the wrong party, the same check issued twice to a party, or for the company to never be reimbursed at all for various expenses. Doc. 1, Compl., ¶ 15. Lastly, Plaintiffs state that Hammond "allowed employees to use 360's credit card in an uncontrolled and unchecked manner . . . with only approximately 5% of those expenses properly submitted." *Id.*

Hammond states that these allegations are conclusory, do not include sufficient factual matter to support a conversion claim, and do not identify the property that Plaintiffs claim was converted. Doc. 9, Def.'s Br., 14.

The Court finds that Plaintiffs' complaint does not plausibly state a claim for conversion through improper check management, credit card use, or contract management.

First, regarding checks, Plaintiffs do not allege that Hammond or other employees actually misused funds obtained by writing checks to cash, erroneously issuing checks to others, or failing to keep track of checks. They merely allege that funds were unaccounted for, uncollected, and poorly managed. Doc. 1, Compl., ¶¶ 15–16. These allegations, taken as true, are "not only compatible with, but indeed . . . more likely explained by" poor financial management than they are with conversion, and therefore do not cross the line from possibly to plausibly pleading that Hammond "is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 680 (discussing the allegations the court had found insufficient in *Twombly*, 550 U.S. at 566–67, 70).

Second, regarding credit cards, the complaint states that *other employees* were using 360 credit cards in an "uncontrolled and unchecked" manner; it does not allege that *Hammond himself* wrongfully used the cards or directed employees to use the cards in an unauthorized manner. Doc. 1, Compl., ¶¶ 15–17. The Court cannot infer conversion from these pleadings. *See Bowers v. Trinity Groves, LLC*, 2021 WL 3710564, at *5 (N.D. Tex. Aug. 20, 2021) (finding no plausibly pleaded conversion claim where others, not the defendant, committed the allegedly wrongful acts on which the conversion claim was based).

Third, regarding contracts, Plaintiffs' response states that paragraphs 19–20 of the original complaint demonstrate that Hammond entered into contracts disposing of 360's assets. Doc. 17, Pls.' Resp., 9. However, the complaint only states that Hammond continued entering into contracts after the Board instructed him not to—it makes no mention of assets being lost as a result. Doc. 1, Compl., ¶¶ 19–20 ( "Hammond refused to abide by the Board's resolutions and continued to enter

contracts for 360. Hammond simply refused to listen to Pinson . . . . He instead allowed various people to continue entering into agreements and contracts on 360's behalf in violation of the Board's directive."). Without an allegation of actual losses due to contractual agreements entered by Hammond, the Court cannot infer that conversion occurred because Hammond entered into contracts without the Board of Directors' authorization. *See 50-Off Stores, Inc. v. Banques Paribas (Suisse) S.A.*, 180 F.3d 247, 254 (5th Cir. 1999) ("Damages are an element of a conversion claim under Texas law."). And since the Court can only review the complaint on a 12(b)(6) motion, the complaint's deficiency cannot be supplemented by Plaintiffs' response. *See In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 676 (N.D. Tex. 2013); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011) ("[I]t is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss." (quoting *In re Baker Hughes Sec. Litig.*, 136 F. Supp. 2d 630, 646 (S.D. Tex. 2001))).

Finally, Plaintiffs generally state that "[Hammond]'s actions constituted the misappropriation of Plaintiffs' property[,] [and that Hammond] wrongfully claimed ownership of 360 to the exclusion of its actual owner and used and disposed of 360's assets in a way inconsistent with the owner's demands." Doc. 1, Compl., ¶ 32. Additionally, Plaintiffs claim that they have suffered actual damages as a result of [Hammond]'s unlawful conduct. *Id.* ¶ 33. These allegations are conclusory and simply restate the elements of conversion; therefore, they are not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 677.

For all these reasons, the Court finds that Plaintiffs have not stated a claim for conversion based on improper check management, credit card use, and contract management.

### 2. Plaintiffs' Allegations of Conversion Through Bank Accounts

Texas law does not normally allow a plaintiff to recover on a conversion claim for intangible assets like "bank accounts." *See Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 901 (Tex. App.—Dallas 2001, no pet.) ("Texas law has never recognized a cause of action for conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document has been converted." (citing *Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979, 982 (S.D. Tex. 1997))); *see also Beardmore v. Jacobson*, 131 F. Supp. 3d 656, 668 (S.D. Tex. 2015) ("Bank accounts 'generally cannot be the subject of conversion, because they are not specific money, but only an acknowledgment by the bank of a debt to its depositor.'" (citing *Reliance Ins. Co. v. U.S. Bank of Wash.*, N.A., 143 F.3d 502, 506 (9th Cir. 1998))).

Plaintiffs allege that Hammond converted 360's bank accounts by refusing to provide access to them. Doc. 1, Compl., ¶ 16. Plaintiffs further state that Hammond blocked a 360-hired financial controller from accessing 360's bank accounts. *Id.* ¶ 17. Hammond states that because the bank accounts were not identified and because no allegations were made as to how Hammond prevented Plaintiffs from accessing 360's bank accounts, the claim is inadequately pleaded. Doc. 20, Def.'s Reply, 6–7.

The Court finds that Plaintiffs have not plausibly alleged conversion based on 360's bank accounts. Without more specific pleading, these bank accounts are presumably intangible properties and thus cannot support a conversion claim under Texas law. *See Express One Int'l*, 53 S.W.3d at 901; *Beardmore*, 131 F. Supp. 3d at 668.

### 3.   Plaintiffs' Allegations of Conversion Through Claim of Ownership

Plaintiffs allege that Pinson is the "sole member and manager" of 360 with "no other equityholders" and that Hammond committed conversion when he "wrongfully claimed ownership of 360 to the exclusion of its actual owner." Doc. 1, Compl., ¶¶ 11, 32. Plaintiffs additionally claim that Hammond's "intent" to own 360 "manifested itself through conversations with various third parties, including clients and vendors, that [Hammond] is 360's owner" and that "Hammond in fact even began referring to himself as an owner in communications and messages with Pinson." *Id.* ¶ 13.

Hammond argues "that a conversion claim cannot result from an expression of opinion of ownership . . . . [and a] statement expressing an opinion or claim about ownership of property is not exercising control over that property." Doc. 9, Def.'s Br., 14. Plaintiffs respond by citing to Tex. Bus. Orgs. Code Ann. § 101.106. Doc. 17, Pls.' Resp., 9 n.1. The statute states that "membership interest in a limited liability company is personal property." Tex. Bus. Orgs. Code Ann. § 101.106.

The Court finds that Plaintiffs have not sufficiently pleaded a conversion claim based on the ownership claim. To begin, they have not pleaded any damages caused by Hammond's actions or shown how Hammond's statements to third parties deprived Pinson of his ownership interest. *See* Doc. 1, Compl., ¶ 13; *50-Off Stores, Inc.,* 180 F.3d at 254. Furthermore, because an ownership interest is not a form of tangible personal property, Plaintiffs cannot sufficiently plead that an ownership was converted unless the intangible interest was put into a physical form and then converted. *Express One Int'l Inc.,* 53 S.W.3d at 901.

For the reasons above, Plaintiffs have not adequately pleaded any basis for their conversion claim. The Court therefore **DISMISSES** this claim **WITHOUT PREJUDICE.**

D.     *The Court Declines to Dismiss Plaintiffs' Breach of Fiduciary Duty Claim*[4]

Under Delaware law, "[a] claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty." *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010), *aff'd sub nom. ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010).

Delaware law recognizes that a CEO—as a corporate officer—owes fiduciary duties. *Gantler v. Stephens*, 965 A.2d 695, 709 (Del. 2009). Hammond served as 360's CEO during the time at issue in this suit. Doc. 1, Compl., ¶ 12; Doc. 9, Def.'s Br., 10 n.1. So, during this time period, Hammond owed a fiduciary duty to 360.

A fiduciary breaches their duty by "commit[ting] an unfair, fraudulent, or wrongful act[.]" *Beard Rsch.,* 8 A.3d at 602. As a fiduciary and agent of a company, a CEO has a duty to disclose information relevant to the company's operation and cannot place "himself in a position antagonistic to his principal concerning the subject matter" of the company. *See Sci. Accessories Corp. v. Summagraphics Corp.*, 425 A.2d 957, 962 (Del. 1980) (citing Restatement (Second) of Agency §§ 381 and 393 (1957)).

Additionally, Delaware recognizes that fiduciary duties include duties of care and loyalty. *E.g.*, *Mills Acquisition Co. v. MacMillan, Inc.*, 559 A.2d 1261, 1280 (Del. 1989). The duty of loyalty

---

[4] Texas Business Organizations Code § 1.102 provides that, "[i]f the formation of an entity occurs when a certificate of formation or similar instrument filed with a foreign governmental authority takes effect, the law of the state or other jurisdiction in which that foreign governmental authority is located governs the . . . internal affairs of the entity." Tex. Bus. Orgs. Code Ann. § 1.102. Because 360 was formed in Delaware, Doc. 1, Compl., ¶ 4, and because the fiduciary duty is an internal affair of the entity, Texas courts would look to Delaware substantive law to determine whether a fiduciary duty exists and whether it was breached. *See Klinek v. LuxeYard, Inc.*, 596 S.W.3d 437, 450 n.9 (Tex. App.—Dallas 2020, no pet.) (citing *Longview Energy Co. v. Huff Energy Fund LP*, 533 S.W.3d 866, 872 (Tex. 2017)). Accordingly, the Court will apply Delaware law to determine whether Plaintiffs have met the pleading requirements to survive a 12(b)(6) motion for this claim.

requires that an officer place the best interest of the company and its shareholders above any self-interest. *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993). The duty of care "requires [an officer] to take an active and direct role" in the actions of the company and is breached when the "fiduciary acted with gross negligence." *In re Pattern Energy Grp. Inc. Stockholders Litig.*, 2021 WL 1812674, at *46 (Del. Ch. May 6, 2021) (citing *Cede & Co.*, 634 A.2d at 368).

Plaintiffs plead that Hammond breached his fiduciary duties by:

(i) failing to follow 360's equity holder's instructions, (ii) failing to abide by 360's board of directors' resolutions, (iii) permitting unqualified employees to manage and oversee 360's financials, (iv) failing to institute basic accounting and financial oversight, (v) demanding equity in 360 in order to continue operating it as a business, (vi) refusing to provide Pinson, the board of directors, and others access to 360's critical financial and operational information, and (vii) misrepresenting to others 360's ownership structure.

Doc. 1, Compl., ¶ 26. Specifically, Plaintiffs allege that Hammond deliberately placed his interests before the company in an effort to obtain equity in the company. *Id.* ¶ 27. Plaintiffs claim that Hammond "unilaterally appointed . . . Sierra . . . , who [according to Plaintiffs] had no financial education . . . and was unqualified for a finance position, to serve as 360's chief financial officer." *Id.* ¶ 15. Plaintiffs additionally state that Hammond "allowed employees to use 360's credit card in an uncontrolled and unchecked manner, causing hundreds of thousands of dollars in spending per month, with only approximately 5% of those expenses properly submitted to the company for approval or tracking." *Id.* Plaintiffs further claim that Hammond refused to implement a method to track cost and expenses "despite strong recommendations to do so." *Id.*

Plaintiffs also allege that Hammond refused "to provide Pinson access to 360's bank accounts . . . [and] prevented others [including a controller hired by 360's Board] from understanding the company's financial health or to investigate financial irregularities. *Id.* ¶¶ 16–17.

Though 360's Board "expressly provided that Hammond could not bind the company through contracts or otherwise, . . . Hammond refused to abide by the Board's resolutions and continued to enter contracts for 360." *Id.* ¶¶ 19–20. Instead, "Hammond simply refused to listen to Pinson, as 360's sole equityholder, or any of 360's directors, despite his obligations to do so." *Id.* ¶ 20. Additionally, Plaintiffs claim that Hammond refused to create a short-term budget and operation plan for 360 that would be provided to Pinson and 360's Board of Directors and that Hammond "would only do so once his employment contract that provided him equity in 360 was in place." *Id.* ¶ 22.

Hammond argues these allegations are insufficient because Plaintiffs do not claim that "Hammond engaged in any fraud or misappropriation of 360's property for his personal pecuniary benefit or to benefit a competitor." Doc. 9, Def.'s Br., 8. Furthermore, Hammond claims that the allegations of breach of fiduciary duty are implausible because 360 retained Hammond for fifteen months, meaning either the "alleged acts were insignificant and did not rise to the level of breach of fiduciary duty" or the Plaintiffs acquiesced in Hammond's actions. *Id.* at 9–10. Hammond further states that Plaintiffs' allegations are implausible because an "at-will employee" would not "scheme to financially injure the company that he worked for and wanted to own" by hiring an "inept" CFO or preventing access to financial records. *Id.* at 10.

The Court finds that Plaintiffs have plausibly alleged a breach of fiduciary duty claim. Plaintiffs allege that Hammond failed to provide needed financial documents to Pinson and 360's Board of Directors in an attempt to gain equity in the company. Doc. 1, Compl., ¶ 27. If true, Hammond failed to disclose information relevant to the company's operation, for his own benefit, breaching his fiduciary duties. *See Cede & Co.*, 634 A.2d at 372 (citing *Stroud v. Grace*, 606 A.2d 75,

84 (Del. 1992)). Plaintiffs also plausibly allege that Hammond breached his duty of loyalty by ignoring instructions from 360's Board and continuing to enter into contracts against the Board's will. Doc. 1, Compl., ¶¶ 19–20; *see Largo Legacy Grp., LLC v. Charles,* 2021 WL 2692426, at *14 (Del. Ch. June 30, 2021). Further, since gross negligence can establish breach of the duty of care under Delaware law, Plaintiffs' allegations that Hammond unilaterally appointed a CFO with no financial education and allowed employees to use company checks and credit lines without controls plausibly plead that Hammond breached his duty of care. *Cf. In re Walt Disney Co. Derivative Litig.,* 906 A.2d 27, 64–67 (Del. 2006). *See generally Cede & Co.,* 634 A.2d at 372. For these reasons, the Court **DENIES** Hammond's motion to dismiss Plaintiffs' breach of fiduciary duty claim.

*E.     The Court Grants Plaintiffs Leave to Amend*

Given that this is the Court's first opportunity to assess the sufficiency of Plaintiffs' allegations, the Court deems it appropriate to provide them one chance to amend their pleadings in light of the deficiencies noted in this Order. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). The amended complaint shall be filed within **TWENTY ONE (21)** days of the date of this Order.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Hammond's Motion to Dismiss (Doc. 8). Specifically, the Court **GRANTS** the Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' request for a declaratory judgment and conversion claim. However, the Court **DENIES** the Motion for Plaintiffs' breach of fiduciary duties claim. Within **TWENTY ONE (21)** days of the date of this Order, Plaintiffs may file an amended

complaint as permitted in Section III (E), *supra*. From the date of Plaintiffs' filing, Hammond has **FOURTEEN (14)** days to file an answer or motion to dismiss pursuant to Federal Rule of Civil Procedure 15(a)(3).

**SO ORDERED.**

**SIGNED: August 8, 2022.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE