UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| 360 SECURITY PARTNERS, LLC AND JASON PINSON, | § | |
| | § | |
| | § | |
| PLAINTIFFS, | § | CIVIL ACTION NO. 3:21-CV-3004-B |
| | § | |
| v. | § | |
| | § | |
| PAUL HAMMOND, | § | |
| | § | |
| DEFENDANT. | § | |

**PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**

Respectfully submitted,

**JACKSON WALKER LLP**

By: ________________________________

Brian H. Oates
Texas State Bar No. 24088144
Hannah E. Walsh
Texas State Bar No. 24125717
boates@jw.com
hwalsh@jw.com
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6000 – Phone

**ATTORNEYS FOR PLAINTIFFS**
**360 SECURITY PARTNERS, LLC**
**& JASON PINSON**

# TABLE OF CONTENTS


1. INTRODUCTION .......... 1
2. BACKGROUND .......... 4
   2.1. Plaintiffs Terminated Hammond Due to His Misconduct. .......... 4
   2.2. Hammond Refused to Return his Company-Owned MacBook. .......... 4
   2.3. Plaintiffs' Exhaustive Efforts to Recover and Preserve the MacBook. .......... 5
   2.4. Hammond Intentionally Deleted All Data Before Returning the MacBook. .......... 6
3. ARGUMENTS AND AUTHORITIES .......... 7
   3.1. Legal Standard. .......... 8
   3.2. Defendant Undeniably Had a Duty to Preserve the MacBook. .......... 8
   3.3. Hammond Destroyed the MacBook Data in Bad Faith. .......... 9
   3.4. Hammond's Spoliation is Highly Prejudicial to Plaintiffs. .......... 11
   3.5. Hammond's Actions Warrant Severe Sanctions. .......... 12
4. PRAYER .......... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashton v. Knight Transp., Inc.*,
772 F. Supp. 2d 772 (N.D. Tex. 2011) .......... *passim*

*Carter v. Burlington Northern Santa LLC*
2016 WL 3388707 (N.D. Tex. 2016).......... 10, 11, 12, 13

*Rimkus Consulting Group, Inc. v. Cammarata*,
688 F. Supp. 2d 598 (S.D. Tex. 2010) .......... 8, 10, 11, 13

**Other Authorities**

Rule 37 .......... 1

Order Accepting Findings and Recommendation of the United States Magistrate Judge, *T & E Inv. Group LLC v. Faulkner*,
No. 11-CV-0724-P, 2014 WL 550596 (N.D. Tex. Feb. 12, 2014) .......... 13, 14

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| 360 SECURITY PARTNERS, LLC AND JASON PINSON, | § | |
| | § | |
| | § | |
| PLAINTIFFS, | § | CIVIL ACTION NO. 3:21-CV-3004-B |
| | § | |
| v. | § | |
| | § | |
| PAUL HAMMOND, | § | |
| | § | |
| DEFENDANT. | § | |

**PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**

Plaintiffs 360 Security Partners, LLC ("360") and Jason Pinson ("Pinson") (collectively, "Plaintiffs") file this Motion for Spoliation Sanctions (the "Motion") against Defendant Paul Hammond ("Hammond" or "Defendant"), and would respectfully show the Court as follows:

**1.**

**INTRODUCTION**

"*You are not getting this laptop*."

That is what Paul Hammond told 360 when it terminated his employment on December 2, 2021, and asked him to return the company owned MacBook computer. It turned out that 360 would eventually get the computer, but only after Hammond permanently and forever deleted all information and data from it, which included critical evidence of his wrongdoing that is the subject of this lawsuit.

Plaintiffs are therefore left with no option but to seek sanctions against Hammond under Rule 37 for his intentional deletion of all electronically stored information on 360's laptop computer he took without authorization when he was terminated as chief executive officer. The laptop contained troves of 360's confidential business information, evidence of Hammond's work

as CEO, and communications with third parties, all of which is critical information and evidence in this lawsuit about Hammond's breaches of fiduciary duties, theft and improper use of company property, and violations of a non-competition agreement.

Hammond deliberately erased all information stored on his work computer by utilizing a computer setting on the Apple laptop to initiate a factory reset. Unbelievably, he did that more than three months after this lawsuit was filed and after he had been served. That conduct is even more egregious given Plaintiffs' continuous and extensive efforts to retrieve the computer from Hammond and explicit requests to preserve all information, data, and communications stored on it. Those efforts included:

- **December 2, 2021:** during 360's face-to-face meeting with Hammond at which it terminated his employment, 360 demanded that he hand over the MacBook. He refused and existed the building with the computer. (App. 041-042).
- **December 2, 2021:** 360 provided Hammond a termination letter demanding that he return the MacBook by December 3, 2021. (App. 005). Hammond refused.
- **February 4, 2022**: phone call between Plaintiffs' counsel and Hammond asking for return of the computer and preservation of all data on it; (App. 002).
- **February 25, 2022**: phone call between Plaintiffs' counsel and Hammond's counsel asking for return of the computer and preservation of all data on it (App. 002).
- **February 28, 2022**: email from Hammond's counsel stating that he "talked with Paul [Hammond] about his computer" and that he "would like to work out an arrangement for transferring and preserving the information on the computer." (App. 007).
- **March 2, 2022**: email from Plaintiffs' counsel to Hammond's counsel recommending a third party forensics company to facilitate the preservation and imaging of Hammond's computer (App. 011).
- **March 10, 2022**: email from Plaintiffs' counsel to Hammond's counsel copying a forensic imaging expert and discussing the logistics of imaging the computer once it is returned (App. 019).
- **March 10, 2022**: email from third party forensic imaging expert to Hammond's counsel providing options for imaging computer (App. 021).

- **March 15, 2022**: email from Plaintiff's counsel to Hammond's counsel asking for the computer to be overnighted to the forensic imaging expert. (App. 024-027).

- **March 21, 2022**: email from Hammond's counsel stating that "Hammond would like to dually image the computer using a local forensic company" and that "Hammond has the computer." (App. 029).

- **April 27, 2022:** letter from Plaintiff's counsel to Hammond's counsel confirming that 360 owns the laptop and demanding its return by May 9, 2022. (App. 031-032).

- **May 18, 2022**: email from Hammond's counsel stating that "Hammond's computer was mailed from our forensic team to your forensic team on Monday May 16" and that it "had been in their possession for over two weeks" because "the computer has very new technology and it took them longer than they expected to complete their work."[1] (App. 037).

- **May 20, 2022**: email from Hammond's counsel stating "the issue of possession of Mr. Hammond's computer is resolved. It has been delivered to the forensic group you or your clients retained. In previous email correspondence, we agreed on a protocol for managing the data in that computer and look forward to implementing that protocol." (App. 037).

Yet, when Plaintiffs' third-party forensics group received the computer there was nothing to image, retrieve, or review. (App. 039-040.) Hammond intentionally deleted all information from the MacBook on March 15, 2022, despite the numerous discussions with him and his counsel regarding a forensic imaging protocol to preserve that very information.

Plaintiffs filed this lawsuit based on Hammond's unethical, reckless, and blatant self-interested practices as 360's CEO. That conduct has continued in discovery, as he completely destroyed relevant and likely damning evidence that Plaintiffs could have used against him. Those actions have prejudiced Plaintiffs' ability to conduct meaningful discovery, disrupted the development of this case, and hindered Plaintiffs' pursuit of their claims.

Plaintiffs respectfully request that the Court sanction Hammond by (1) ordering an adverse jury instruction relating to the destroyed evidence on Hammond's 360-owned laptop (2) imposing

[1] Hammond's forensic team, after weeks of work, ultimately determined that the MacBook had zero retrievable data because the computer had been reset to its factory setting and effectively wiped.

a monetary sanction against Hammond in an amount to be determined by the Court as deterrence for future discovery misbehavior, and (3) awarding Plaintiffs' attorneys' fees, costs, and expenses incurred in pursuing possession of the laptop, forensically imaging the laptop, and pursuing this Motion.

**2.**

**BACKGROUND**

**2.1. <u>Plaintiffs Terminated Hammond Due to His Misconduct.</u>**

From August 2020 to December 2021, Paul Hammond served as CEO of 360. During Hammond's tenure, he abandoned the fiduciary duties he owed to 360 as an officer, instead acting for his own self-interest. Hammond blatantly disregarded the board of directors' resolutions and actively worked to conceal information from them and other key stakeholders. Hammond committed (and permitted others to commit) egregious financial improprieties and refused to implement appropriate accounting processes. Hammond's egregious mismanagement significantly harmed 360's growth and profitability.

As a result, Plaintiffs filed this suit on December 1, 2021, against Hammond, stemming from his flagrant misconduct. The next day, the board of directors officially terminated Hammond as CEO. *See* Declaration of Jerry Trojan ("Trojan Dec."), attached as Exhibit C, at ¶ 2 (App. 041).

**2.2. <u>Hammond Refused to Return his Company-Owned MacBook.</u>**

As an officer of 360, Hammond possessed a company laptop (the "MacBook"). There is no dispute that, at all times, 360 owned the MacBook. Hammond conducted his 360 related work on the MacBook. He refused to save communications and documents on 360's network, instead opting to save items solely on the MacBook. It was the lone source of much of his work at 360.

At his termination, which occurred during a face-to-face meeting at 360's office, 360 demanded that he hand over the MacBook. Trojan Dec. at ¶ 3. (App. 041). 360 informed

Hammond that the MacBook was company property and contained company data and information. Trojan Dec. ¶ 3. (App. 041). Hammond told 360 that it was "not getting this laptop." Trojan Dec. ¶ 3. (App. 041). He refused to hand it over and instead got up and ran out of the building with the computer in hand. Tojan Dec. ¶¶ 3-4. (App. 041-42). At his termination meeting, he was also provided a letter that demanded the return all property belonging to 360, including the MacBook, no later than close of business on December 3, 2021. *See* Tojan Dec. ¶ 2 (App. 041); Declaration of Brian H. Oates ("Oates Dec."), attached as Exhibit A, at ¶ 2, Ex. A-1 (App. 001, 005). Hammond refused to comply with that demand. Instead, Hammond wrongfully retained the MacBook for months after his termination. *See id*. ¶¶ 3-15. (App. 001-003).

**2.3. <u>Plaintiffs' Exhaustive Efforts to Recover and Preserve the MacBook.</u>**

On February 4, 2022, Plaintiffs' counsel spoke directly to Hammond regarding his return of the MacBook and preservation of all data stored on it. *See* Oates Dec. at ¶ 3. (App. 001-002). On February 25, 2022, Plaintiffs' counsel spoke with Hammond's counsel over the phone. *See* Oates Dec. at ¶ 4. (App. 002). During that conversation, Plaintiffs' counsel reiterated 360's ownership of the MacBook and emphasized Plaintiffs' need for Hammond to preserve the data on the device for discovery purposes. *Id*. On February 28th, Hammond's counsel advised: "I talked with Paul about his computer. He would like to work out an arrangement for transferring and preserving the information on the computer." *See* Oates Dec. at ¶ 5, Ex. A-2. (App. 002, 007). In response, Plaintiffs' counsel responded on March 2, 2022, and recommended using a third party forensics company for Hammond to deliver the MacBook. *See* Oates Dec. at ¶ 6, Ex. A-3. (App. 002, 013).

Per the Parties' email exchange, Plaintiffs' counsel initiated contact with a vendor to image the device on March 10, 2022, copying Hammond's counsel. *See* Oates Dec. at ¶ 7, Ex. A-4. (App. 002, 019). The vendor responded with various options to collect and image the MacBook. *See*

Oates Dec. at ¶ 8, Ex. A-5. (App. 002, 021). Hammond's counsel did not immediately respond, so Plaintiffs' counsel followed up and initiated additional discussion regarding shipping the MacBook to Consilio. *See* Oates Dec. at ¶ 9 Ex. A-6. (App. 002, 024).

On March 21, 2022, Hammond's counsel informed Plaintiffs' counsel that Hammond "would like to dually image the computer using a local forensic company" and that he would "be in touch" to resolve the matter. *See* Oates Dec. at ¶ 10, Ex. A-7. (App. 002, 029). Plaintiffs' counsel did not hear back from Hammond's counsel on the MacBook issue for more than a month. *See* Oates Dec. at ¶ 11. (App. 002).

On April 27, 2022, Plaintiffs' counsel sent a formal demand letter to Hammond's counsel, requesting that Hammond return the MacBook to Plaintiffs by May 9th. *See* Oates Dec. at ¶ 12, Ex. A-8. (App. 002-003, 031-032). Hammond counsel agreed during a phone call to produce the device by that date. *Id.* Hammond failed to produce the MacBook as agreed. *Id.* at ¶ 13. (App. 003).

Plaintiffs' counsel issued yet another demand letter to Hammond on May 12th. *See* Oates Dec. at ¶ 14, Ex. A-9. (App. 003, 034-035). In response, Hammond's counsel advised:

> I have your letter of May 12. 2022. I am working on a response but will not be able to get anything to you before Friday, May 20. I can pass on that Hammond's computer was mailed from our forensic team to your forensic team on Monday May 16. It had been in their possession for over two weeks. Apparently the computer has very new technology and it took them longer than they expected to complete their work.

*See* Oates Dec. at ¶ 15, Ex. A-10. (App. 003, 037).

### 2.4. <u>Hammond Intentionally Deleted All Data Before Returning the MacBook.</u>

Plaintiffs hired Consilio, LLC, a professional forensics firm, to review the MacBook. Consilio finally received it for imaging on May 19, 2022, despite having sought it for more than five months. *See* Declaration of Yaniv Schiff ("Schiff Dec."), attached as Ex. B, at ¶ 8. (App.

039). Plaintiffs were shocked to learn from Consilio that Hammond had performed a "factory reset" on the MacBook on March 15, 2022. *See* Schiff Dec. at ¶ 10. (App. 039). This reset prevented Plaintiffs from recovering *any* pre-March 15, 2022 data from the device. Schiff Decl. at ¶¶ 10, 13. (App. 039-040),

Specifically, Plaintiffs' forensic analyst concluded that "[t]he user profile contained zero user generated files," and "[t]he user initiated system reset process effectively wipes all data from the laptop's hard drive rendering all user generated content non-recoverable." Schiff Decl. at ¶ 13. (App. 040). In order words, the factory reset Hammond performed on the MacBook "resulted in the complete and permanent deletion of all information and electronically stored data on the laptop." Schiff Decl. at ¶ 10. (App. 039)

Hammond's own forensic analyst also performed an independent analysis of the MacBook and confirmed that Hammond reset the MacBook to its factory settings and therefore there was no collectible data. Oates Dec. at ¶ 17. (App. 003). Despite knowledge of the factory reset, Hammond's counsel failed to inform Plaintiffs of his client's misconduct in factory resetting the MacBook. Oates Dec. at ¶ 16. (App. 003). Because of Hammond's intentional behavior and his counsel's dilatory conduct, Plaintiffs now have no way of knowing what information Hammond wiped from the MacBook. Given Hammond's great desire to keep the MacBook out of Plaintiffs' hands and intentional efforts to delete all information on the computer before its return, there is only one conclusion to be draw: the data would have been damaging to Hammond and would have supported Plaintiffs' claims in this suit.

**3.**

**ARGUMENTS AND AUTHORITIES**

Hammond's deliberate destruction of relevant evidence warrants sanctions. At a minimum, those sanctions must include an adverse jury instruction and attorneys' fees in an amount

commensurate with Plaintiffs' making and presenting this Motion. Plaintiffs also believe that given Hammond's outrageous and deliberate conduct to destroy information during the pendency of this case, he should also be sanctioned monetarily.

**3.1. Legal Standard.**

"Spoliation is the destruction or material alteration of evidence or to [sic] the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 800 (N.D. Tex. 2011) (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (internal quotations omitted). A party has engaged in sanction-worthy spoliation when: (1) "a duty to preserve the information" exists; (2) "a culpable breach of that duty" occurred; and (3) there is "resulting prejudice to the innocent party." *Id.* at 799-800.

**3.2. Defendant Undeniably Had a Duty to Preserve the MacBook.**

It is indisputable that Hammond had a duty to preserve the MacBook and the data thereon. A duty to preserve information "arises when a party knows or should know that certain evidence is relevant to pending or future litigation." *Id.* at 800. "Once litigation is reasonably anticipated, a potential party to that litigation must not destroy unique, relevant evidence that might be useful to an adversary." *Id.* at 800 (internal quotations omitted). The duty to preserve evidence extends to "documents or tangible things [] or to individuals likely to have discoverable information that the disclosing party may use to support its claims or defenses." *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612–13 (S.D. Tex. 2010). Further, the "duty to preserve evidence is a duty owed to the *court*, not to the party's potential adversary, hence, spoliation is considered an abuse of the judicial process," and therefore warrants sanctions. *Ashton*, 772 F. Supp. 2d at 800 (emphasis in original).

Here, this lawsuit had been pending for three-and-a-half months before Hammond destroyed the MacBook data, and therefore litigation was not only anticipated, but realized before the spoliation. Further, Hammond used the 360-owned MacBook to conduct business as 360's CEO of 360. Plaintiffs' suit is based solely on Hammond's conduct as 360's CEO. Any reasonable person would conclude that the MacBook data would be relevant to Plaintiffs' claims and defenses. Not only *should* Hammond have known that the data on the MacBook was relevant to the pending suit, but Hammond had *actual* knowledge of the MacBook data's relevancy. Indeed, Hammond's counsel acknowledged Plaintiffs' desire to preserve the MacBook for discovery purposes weeks before its spoliation. *See* Ex. A-2. (App. 007).

Thus, Hammond cannot dispute that he had a duty to preserve the MacBook and its data prior to March 15th and the first element for spoliation sanctions is satisfied.

### 3.3. **Hammond Destroyed the MacBook Data in Bad Faith.**

A culpable breach of the duty to preserve occurred when Hammond intentionally—and in obvious bad faith—initiated the factory reset and destroyed all the MacBook data. The Court can order an adverse-inference jury instruction when the spoliating party acted in bad faith. *Ashton*, 772 F. Supp. 2d at 800 (citing *King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003)). A party acts in bad faith if he either (1) had a "fraudulent intent and a desire to suppress the truth," or (2) destroys evidence "for the purpose of depriving the adversary of the evidence." *Id.* (internal citations and quotations omitted). Further, "The Fifth Circuit has instructed that an adverse inference jury instruction for spoliation is appropriate where a showing is made that the malfeasant party 'intentionally destroy[ed] important evidence in bad faith [and] did so because the contents of those documents were unfavorable to that party.'" *Id.* at 801 (citing *Whitt v. Stephens County*, 529 F.3d 278, 284 (5th Cir. 2008)). Courts often look to the spoliating party's proffered

justifications for the destruction of evidence to determine whether bad faith exists. *See Rimkus*, 688 F. Supp. 2d at 643.

In *Carter v. Burlington Northern Santa LLC*, a court in the Northern District held that a plaintiff acted in bad faith, warranting spoliation sanctions. 4:15-CV-366-O, 2016 WL 3388707, at *5 (N.D. Tex. 2016). There, opposing counsel instructed the plaintiff to preserve the contents of a folder at a deposition; the plaintiff refused, stating that the notes in the folder contained her "personal business" and "had nothing to do with" the lawsuit. *Id.* at *2. When the plaintiff later turned over the folder, some of its contents were missing. *Id.* The court held that the plaintiff acted in bad faith because neither she nor her attorney could "provide any credible explanation for their behavior in refusing to turn over the contents of the folder when first requested" and "their proffered reason for refusing to do so" was false. *Id.*

*Rimkus* is also instructive. *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 607 (S.D. Tex. 2010). In *Rimkus*, the court held that it was reasonable to conclude that the defendants acted in bad faith when they intentionally destroyed emails and other electronic information at a time when "they were known to be relevant to anticipated or pending litigation" and defendants "concealed and delayed providing information in discovery that would have revealed their spoliation." *Id.* at 607, 644. The court stated that "case law recognizes that such conduct is harmful in ways that extend beyond the parties' interests and can justify severe sanctions." *Id.* Ultimately, the court held that an adverse jury instruction and award of attorneys' fees were appropriate sanctions. *Id.* at 608.

Here, Hammond's conduct demonstrates bad faith. Hammond had notice of his duty to return the MacBook to 360 and preserve evidence since December 2, 2021. *See* Ex. A-1; Oates Dec. at ¶ 3. (App. 001-002, 005). Plaintiffs' counsel made multiple oral and written demands for

Hammond to both preserve and return the MacBook beginning in February 2022. Oates Dec. at ¶¶ 3-14. (App. 001-003). And, weeks before the March 15, 2022, "factory reset," Hammond's counsel instructed his client to preserve information on the device and arrange to return it to Plaintiffs. *See* Ex. A-2. (App. 007). Nevertheless, Hammond personally and intentionally reset the computer before sending it to his own vendor for imaging pursuant to the parties' agreement to preserve the very information that he deleted. There is simply no valid explanation for that conduct and it rises to the level of bad faith.

Moreover, Hammond and his counsel failed to inform Plaintiffs of the factory reset for more than two months. The fact that Hammond proceeded to wipe data from the MacBook despite several express warnings to preserve that information, coupled with the fact that he later failed to inform Plaintiffs of his actions, would lead any reasonable person to conclude that Hammond acted intentionally with the intent to deprive Plaintiffs of the information on the laptop and suppress the truth. Just like in *Carter* and *Rimkus*, the conduct here—intentionally destroying emails and other electronic data while litigation was pending and delaying notice to opposing counsel of the destruction—clearly constitutes bad faith sufficient to warrant severe sanctions.

**3.4. <u>Hammond's Spoliation is Highly Prejudicial to Plaintiffs.</u>**

In order to show prejudice, "the party seeking sanctions must demonstrate that the missing or altered evidence would have been relevant to her case." *Ashton*, 772 F. Supp. 2d at 801. "Lost or destroyed evidence is relevant if a reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Id.* (internal quotations omitted). "Prejudice to the non-culpable party can range from an utter inability to prove claims or defenses to minimal effects on the presentation of proof" and "courts must be careful that the application of this burden is not too onerous, otherwise the spoliating party might be allowed to profit from its own misconduct." *Id.* Courts have inferred the likelihood of prejudice based on

the circumstances surrounding the spoliation. *See, e.g.*, *Carter*, 2016 WL 3388707, at *5 (awarding attorneys' fees and an adverse inference jury instruction, the court reasoned that "[w]hile it is impossible for the Court to know what is on the missing documents, based on the above, it is reasonable to infer that such documents were relevant to the lawsuit, the loss of which is prejudicial to Defendant.").

So too, here, is it reasonable to infer that the documents on the MacBook were relevant to this lawsuit and its loss is prejudicial to Plaintiff. Hammond used the 360-owned MacBook to conduct business as CEO of 360. Plaintiffs are now suing Hammond for his conduct as 360's CEO, including his unauthorized actions taken in contravention of the Board of Directors' resolutions and Plaintiffs' explicit instructions. It is more than reasonable to assume that Hammond had communications and data saved locally on the MacBook related to the very actions 360 has sued him over, as well as other information related to his conduct as 360's CEO.

Thus, it is highly likely that the data Hammond intentionally wiped from the MacBook would have contained information to support Plaintiffs' claims in this suit, and as a result of Hammond's intentional destruction of that information, Plaintiffs are prejudiced. The data contained on the MacBook indisputably is relevant to Plaintiffs' claims and defenses, and the destruction of that data has *at least* a "minimal effect[] on the presentation of proof" and therefore is grounds for an adverse jury instruction and award of attorneys' fees. *See Ashton*, 772 F. Supp. 2d at 801; *see also Carter*, 2016 WL 3388707, at *5.

**3.5. <u>Hammond's Actions Warrant Severe Sanctions.</u>**

A federal court has the inherent power to sanction a party who has abused the judicial process by spoliating evidence. *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 799 (N.D. Tex. 2011). Courts have broad discretion in choosing a remedy "proportionate to both the culpable conduct of the spoliating party and resulting prejudice to the innocent party." *Id.* at 801. Examples

of appropriate sanctions "include awarding attorney's fees, deeming certain facts admitted, giving an adverse inference instruction to the jury, striking pleadings, entering a default judgment, and dismissing the case entirely." *Id.* at 801. Additionally, courts routinely impose monetary sanctions against a spoliating party to deter the party from further discovery misconduct. *See T & E Inv. Group LLC v. Faulkner*, No. 11-CV-0724-P, 2014 WL 550596, at *7 (N.D. Tex. Feb. 12, 2014) (Upholding the Magistrate's $27,500 monetary sanction against the spoliating party.)

An appropriate sanction should "(1) deter parties from engaging in spoliation; (2) place the risk of erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Id.* (quotations omitted). An adverse jury instruction is often given for the intentional destruction of electronic evidence. *Rimkus Consulting Group, Inc.*, 688 F. Supp. 2d at 618; *see also Carter*, 2016 WL 3388707, at *4 ("If a court finds that both evidence of destruction and bad faith have been demonstrated, it may then infer that the evidence would be unfavorable to the destroying party if it were introduced in court.") (awarding attorneys' fees and an adverse inference jury instruction).

Just as in *Carter* and *Rimkus*, an adverse jury instruction and attorneys' fees is appropriate here to sanction Hammond for his deliberate destruction of relevant evidence. There is no substitute for the MacBook data—neither Hammond's nor Plaintiffs' forensic analysts have been able to recover *any* pre-March 15th data from the device (*i.e.*, the entire duration of Hammond's tenure as CEO and the immediate aftermath of his termination).; *see also* Ex. B, Schiff Decl. at ¶¶ 10 (testifying that the factory reset Hammond performed on the MacBook "resulted in the complete and permanent deletion of all information and electronically stored data on the laptop."). (App. 039). Hammond's conduct has severely hampered Plaintiffs' ability to discover the extent

to which Hammond violated his fiduciary duties and converted property from Plaintiffs during his tenure as CEO. Further, because Hammond acted intentionally in the face of multiple requests to preserve the MacBook data from Plaintiffs' counsel, this court may exercise its discretion to order an adverse inference jury instruction and award reasonable attorneys' fees for pursuit of this Motion necessitated by Hammond's spoliation.

Similarly, Hammond—just like the non-movant in *Faulkner*—spoliated computer evidence by altering the contents of the computer data and failed to provide the computer data to the Plaintiff. *See T & E Inv. Group LLC v. Faulkner*, No. 11-CV-0724-P, 2014 WL 550596, at *4 (N.D. Tex. Feb. 12, 2014). Therefore, as the court awarded in *Faulkner*, the court here should also impose a monetary penalty against Hammond to deter further discovery misconduct. *See id*. (A monetary sanction of $27,500 was appropriate where the non-movant "attempt[ed] to hide," failed to produce, and "materially altered the contents" of the computer data.).

**4.**

**PRAYER**

For the foregoing reasons, Plaintiffs' Motion for Spoliation Sanctions should be GRANTED and the Court should (1) order an adverse jury instruction related to Defendant's spoliation of evidence on the MacBook, (2) impose a monetary sanction against Defendant in an amount to be determined by the Court as deterrence for future discovery misbehavior, and (3) award Plaintiffs' reasonable attorneys' fees, costs, and expenses incurred in pursuing possession of the laptop, forensically imaging the laptop, and pursuing this Motion, as necessitated by Defendant's spoliation.

Respectfully submitted,

**JACKSON WALKER LLP**

By:

*/s/ Brian H. Oates*
Brian H. Oates
Texas State Bar No. 24088144
Hannah E. Walsh
Texas State Bar No. 24125717
boates@jw.com
hwalsh@jw.com
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6000 – Phone

**ATTORNEYS FOR PLAINTIFFS 360 SECURITY PARTNERS, LLC & JASON PINSON**

## CERTIFICATE OF CONFERENCE

I hereby certify that I held a telephone conference with counsel for Defendant about the relief requested herein. Defendant is opposed to the requested relief.

*/s/ Brian H. Oates*
Brian H. Oates

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5.1 on October 25, 2022.

*/s/ Brian H. Oates*
Brian H. Oates