UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| 360 SECURITY PARTNERS, LLC and JASON PINSON, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:21-CV-3004-B |
| PAUL HAMMOND, | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs 360 Security Partners, LLC and Jason Pinson's Motion for Spoliation Sanctions (Doc. 36). For the following reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion.

## I.

## BACKGROUND

This case involves a dispute between a company, the company's owner, and the company's former chief executive officer ("CEO"), Defendant Paul Hammond. This Motion concerns Hammond's decision to permanently wipe his company laptop despite his obligation to preserve relevant evidence relating to this lawsuit.

Plaintiff 360 Security Partners, LLC ("360") owns companies that provide canine security training and academies. *See* Doc. 31, Second Am. Compl., ¶¶ 12, 17. Plaintiff Jason Pinson is 360's "sole member and manager" and only equity holder. *Id.* ¶ 11. 360 terminated Hammond's employment on December 2, 2021 after discovering Hammond was mismanaging 360 and "withholding critical information . . . to coerce . . . [Pinson] to award [him] equity. *Id.* ¶¶ 32–33.

Upon his termination, 360 requested Hammond return his company laptop ("the MacBook").[1] *Id.* ¶ 34. Hammond refused. *Id.*

Months of back-and-forth communication ensued between the parties pertaining to the MacBook's return. Doc. 36, Mot. Sanctions, 4–6. Plaintiffs' counsel also reiterated the "need for Hammond to preserve the data on the device for discovery purposes." *Id.* at 5. The parties eventually agreed to have the computer examined by two separate forensic companies of the parties' choosing. *Id.* at 6. However, when Plaintiffs' forensic analysts received the computer on May 19, 2022, they discovered that Hammond had performed a "factory reset" on the MacBook on March 15, 2022. *Id.* at 6–7; Doc. 37, App., Ex. B, Schiff Decl., ¶ 10. The reset "effectively wipe[d] all data from the laptop's hard drive rendering all user generated content non-recoverable." Doc. 37, Schiff Decl., ¶ 13.

Hammond does not deny he reset the MacBook. Doc. 45, Resp., 10. Hammond claims he reset the computer to avoid "deeply personal information falling into [Plaintiffs'] hands. *Id.* He claims the history of distrust between the parties caused him to make "an honest mistake . . . to protect his family's privacy." *Id.* However, he claims he "did not believe that forensic experts would be unable" to recover the data on the computer. *Id.* at 4. Instead, he thought "the computer would be limited to a forensic reproduction and [he] would have an ability to control dissemination of the information." *Id.* at 10. Finally, Hammond claims he possesses "a drive containing documents

---

[1] The parties dispute whether this computer was Hammond's "primary work computer." *Compare* Doc. 36, Mot. Sanctions, 4 (claiming the computer was "the lone source of much of [Hammond's] work at 360"), *with* Doc. 45, Resp., 3 (claiming "Hammond used a personally owned computer as his primary work computer" and the MacBook operated as "a secondary backup computer"). Regardless of whether the MacBook was Hammond's primary or secondary work computer, for purposes of this Motion, the only relevant fact is that Hammond performed at least some work for 360 on the MacBook.

downloaded in part from the computer at issue through February[] 2022" that can "replace information that was on the [MacBook]."[2] *Id.* at 15.

After Plaintiffs learned the MacBook data was destroyed, they filed this Motion on October 25, 2022. Doc. 36, Mot. Sanctions. A hearing on the Motion was held on February 8, 2023. The Court addresses the arguments made in the briefing and at the hearing below.

## II.

## LEGAL STANDARD

A federal court has the inherent power to sanction a party who has abused the judicial process. *Chambers v. NASCO,* 501 U.S. 32, 44–45 (1991). The spoliation of evidence is one such abuse. *Rimkus Consulting Grp., Inc. v. Cammarata,* 688 F. Supp. 2d 598, 611 (S.D. Tex. 2010). "Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.,* 271 F.3d 583, 590 (4th Cir. 2001) (citing *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999)). "If a party *intentionally* destroys evidence, the trial court may exercise its discretion to impose sanctions on the responsible party." *Coastal Bridge Co., v. Heatec, Inc.,* 833 F. App'x 565, 573 (5th Cir. 2020) (per curiam).

For a court to find spoliation, "(1) the spoliating party must have controlled the evidence and been under an obligation to preserve it at the time of destruction; (2) the evidence must have been intentionally destroyed; and (3) the moving party must show that the spoliating party acted in bad faith." *Coastal Bridge Co.,* 833 F. App'x at 574.

---

[2] This appears to be the first mention of the existence of this hard drive. Plaintiffs claim "[a]t no point . . . did Defendant mention that he had a hard drive with some of the destroyed information." Doc. 54, Reply, 10.

Before a court may impose an adverse inference instruction, the party seeking the spoliation sanction must also demonstrate "the destroyed evidence was relevant to the party's claim or defense." *Id.* (internal quotations omitted); *see Rimkus,* 688 F. Supp. 2d at 615–16. When considering such an instruction, a court must decide "(1) whether the evidence is relevant to the lawsuit; (2) whether the evidence would have supported the inference sought; and (3) whether the nondestroying party has suffered prejudice from the destruction of the evidence." *Rimkus,* 688 F. Supp. 2d at 616.

## III.

## ANALYSIS

The parties only dispute whether Hammond destroyed the MacBook data in bad faith and whether the lost data was relevant and the loss prejudiced Plaintiffs. Both parties agree Hammond possessed a duty to preserve the information on the MacBook. Doc. 36, Mot. Sanctions, 8–9; Doc. 45, Resp., 2. Further, both parties agree Hammond intentionally performed a factory reset on the MacBook. Doc. 36, Mot. Sanctions, 6–7; Doc. 45, Resp., 4. Thus, the Court first addresses Hammond's alleged bad faith and then considers the potential prejudice to Plaintiffs. Finally, the Court considers the appropriateness of Plaintiffs' proposed sanctions. After reviewing the evidence included in the briefing and at the hearing, the Court finds Hammond's bad-faith conduct warrants an adverse inference instruction and an award of attorneys' fees.

A.    *Whether Hammond Deleted the MacBook Data in Bad Faith*

The Court first addresses whether Hammond destroyed the MacBook data in bad faith. Hammond argues he reset the MacBook out of an admittedly misguided desire to preserve his family's privacy. Doc. 46-1, Ex. A, Hammond Decl., ¶ 2. Plaintiffs argue Hammond's decision was

not "an innocent misstep" and was instead "a calculated choice to destroy all evidence of his wrongdoings before turning over the [MacBook.]." Doc. 54, Reply, 5.

A plaintiff alleging spoliation must establish that the defendant *intentionally* destroyed the evidence for the purpose of depriving opposing parties of its use. *Coastal Bridge Co.*, 833 F. App'x at 573. Severe spoliation sanctions, such as an adverse inference jury instruction, may not be imposed unless the destroying party acted in bad faith. *King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003). "'Mere negligence is not enough' to warrant an instruction on spoliation." *Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 208 (5th Cir. 2007) (per curiam) (quoting *Vick v. Tex. Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975). The Fifth Circuit has described the term "bad faith" as "destruction for the purpose of hiding adverse evidence." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015).

The Court agrees with Plaintiffs that Hammond's actions demonstrate bad faith. First, Hammond was informed on numerous occasions by both Plaintiffs' counsel and his own counsel of the importance of preserving the MacBook's data. *See* Doc. 36, Mot. Sanctions, 4–5 (detailing Plaintiffs' efforts to recover and preserve the MacBook); Doc. 45, Resp., 4 (detailing Hammond's counsel's instruction to turn over the MacBook "as-is"). Further, Hammond was told by his counsel to turn over the MacBook "without altering it." Doc. 46, Hammond Decl., ¶ 2. Hammond's decision to wipe the MacBook was made in blatant disregard of his duty to preserve information and his counsel's explicit instructions to not alter the MacBook.

Second, the Court finds Hammond's explanations for wiping the MacBook unconvincing. As to preserving his family's privacy, Hammond had a simpler, Court-sanctioned option for preserving such interests. The parties previously agreed to an exhaustive protective order, which allowed the parties to "designate by written notice, either incorporated in the matter disclosed or

separately, any Material as 'Confidential' if it believes that such Material contains confidential or proprietary information." *See* Doc. 27, Protective Order, ¶ 2. Additionally, the Protective Order provides:

> Any person having access to Confidential Material shall be prohibited from disclosing any such information to any other person except as provided herein, and each such person shall take appropriate measures to safeguard the confidentiality of the Confidential Material to prevent the willful or inadvertent disclosure thereof and to assure that the provisions of this Order are accomplished.

*Id.* ¶ 5. Any worry Hammond may have had regarding his personal information was addressed in the Protective Order. Further, if Hammond had discussed such worries with his counsel—which it appears he did not—the Protective Order could have been modified to include classifications such as "Highly Confidential" or "Attorneys Eyes Only." These modifications would have prevented Hammond's personal information from "falling into [Plaintiffs'] hands" and not resulted in the destruction of relevant evidence. *See* Doc. 45, Resp., 10. And yet, Hammond chose to forego a Court-sanctioned solution and take matters into his own hands. This decision suggests an ulterior motive.

As to Hammond's ignorance to the permanent destruction of the MacBook data, the evidence suggests such ignorance is highly unlikely. First, as mentioned above, Hammond was repeatedly told to turn over the MacBook unaltered. *See* Doc. 36, Mot. Sanctions, 4–5; Doc. 45, Resp., 4. Any notion that wiping the MacBook would not be detrimental to recovering its data should have been dispelled with these instructions. Additionally, before Hammond chose to erase all content from the MacBook, the MacBook would have displayed the following message:



Doc. 54, Reply, 4 (citing Apple, Inc., *Erase Your Mac and Reset It to Factory Settings*, https://support.apple.com/en-us/HT212749 (last visited January 31, 2023)). The message warns: "All data, settings, and apps will be erased. This cannot be undone." This should have placed Hammond on notice of the permanency of his decision. Again, the decision to ignore such a message suggests deliberateness, not ignorance.

After considering the evidence submitted by the parties, the Court finds that Hammond reset the MacBook with full knowledge that he was permanently deleting the MacBook's data, despite being repeatedly advised of his duty to preserve relevant information. Thus, the Court finds that Hammond reset the MacBook in bad faith to deprive Plaintiffs of any relevant information the MacBook contained.

B.    *Whether Plaintiffs Are Prejudiced by the Destruction of the MacBook Data*

The Court next addresses whether Plaintiffs are prejudiced by Hammond's decision to wipe the MacBook. Plaintiffs argue the MacBook, which Hammond used to "conduct business as CEO of 360," contained "communications and data . . . related to the very actions 360 [sued Hammond over.]" Doc. 36, Mot. Sanctions, 12. Thus, the loss of such data is prejudicial to Plaintiffs' ability

to prove their case. *Id.* Hammond argues Plaintiffs possess "multiple sources of documents concerning Hammond's work." Doc. 45, Resp., 14. Further, Hammond claims he will produce in discovery "over 15,000 pages of responsive documents[,] . . . a copy of his Outlook emails while employed with 360[, and] . . . a drive containing documents downloaded in part from the computer at issue through February[] 2022." *Id.* at 15. As a result, Hammond claims "there is no reason to believe [Plaintiffs] are lacking in sources for relevant information to prove their claims." *Id.*

To satisfy the prejudice requirement, the party seeking sanctions must demonstrate that the missing or altered evidence would have been relevant to its case. *Rimkus,* 688 F. Supp. 2d at 616. "[L]ost or destroyed evidence is 'relevant' if a 'reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.'" *Coastal Bridge Co.,* 833 F. App'x at 574. Generally, the prejudice element is satisfied "where a party's ability to present its case or to defend is compromised." *Ashton v. Knight Transp., Inc.,* 772 F. Supp. 2d 772, 801 (N.D. Tex. 2011) (Boyle, J.). While "speculative or generalized assertions . . . are insufficient[,]" courts must be careful that the application of this burden is not too onerous, otherwise the spoliating party might be allowed to profit from its own misconduct. *Rimkus,* 688 F. Supp. 2d at 616–17.

The Court finds the deleted MacBook data contained relevant information to Plaintiffs' case and they are prejudiced by its loss. It is without question that the MacBook contained relevant communications and data relating to Hammond's actions as CEO, the basis of Plaintiffs' breach of fiduciary duty, breach of contract, and conversion claims against him. Further, Hammond essentially concedes the MacBook contained relevant information by offering to produce "a drive

containing documents downloaded in part from the computer at issue through February[] 2022." *See* Doc. 45, Resp., 15.

However, the existence of this drive does not eliminate the prejudice suffered by Plaintiffs. Unlike in *Rimkus*, where the party seeking sanctions had recovered some of the deleted emails, here, the Court lacks such an unbiased assessment as to the prejudice to Plaintiffs. *Cf.* 688 F. Supp. 2d at 646 (considering both the favorable and unfavorable emails recovered to assess the level of prejudice suffered). And Hammond's assertion that Plaintiffs will not "lack[] . . . sources for relevant information" provides little reprieve given his actions prompted this Motion. *See* Doc. 45, Resp., 15. Without the MacBook data, there is no way of knowing whether Hammond's drive contains all data from the MacBook or only the data favorable to Hammond. Thus, the Court finds it would be unfair to allow Hammond's drive to dictate the prejudice to Plaintiffs. Therefore, despite Plaintiffs' access to sources of proof other than the MacBook, Hammond's decision to reset the MacBook has compromised Plaintiffs' ability to obtain evidence to prove their claims.

C.   *Whether Plaintiffs' Suggested Sanctions Are Appropriate*

The Court finds some form of sanction necessary "[t]o level the evidentiary playing field and to sanction [Hammond's] bad-faith conduct." *See Rimkus*, 688 F. Supp. 2d at 645. Plaintiffs seek three sanctions: (1) an adverse jury instruction as to the destruction of the MacBook data; (2) a monetary sanction against Hammond; and (3) "attorneys' fees, costs, and expenses incurred in pursuing possession of the laptop, forensically imaging the laptop, and pursuing this Motion." Doc. 36, Mot. Sanctions, 14. Hammond argues these sanctions are unnecessary and any discovery expenses would be "unrealized and undefined expenses without a present showing that such expenses will be directly related to the spoliation issue." Doc. 45, Resp., 16–17. Further, he argues

each party agreed to conduct forensic analysis of the computer "[r]egardless of the data on the computer," so this expense should not be shifted because of Hammond's conduct. *Id.* at 17.

In imposing sanctions, courts must craft a remedy that is proportionate to both the culpable conduct of the spoliating party and resulting prejudice to the innocent party. *Anadarko Petroleum Corp. v. Davis,* 2006 WL 3837518, at *27 (S.D. Tex. Dec. 28, 2006). In choosing the appropriate remedy, a court must ensure that it is "no harsher than necessary to respond to the need to punish or deter and to address the impact on discovery." *Rimkus,* 688 F. Supp. 2d at 618. In other words, an appropriate sanction should "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *West,* 167 F.3d at 779 (internal quotation omitted); *Victor Stanley, Inc. v. Creative Pipe, Inc.,* 269 F.R.D. 497, 533–34 (D. Md. 2010), *aff'd in part, modified in part*, 2010 WL 11747756 (D. Md. Nov. 1, 2010). A court should also consider "whether the sanctions it imposes will prevent abuses of the judicial system and promote the efficient administration of justice." *Victor Stanley,* 269 F.R.D. at 539 (internal quotations omitted).

First, the Court finds an adverse inference instruction is warranted because it will place the risk of "any erroneous judgment" regarding the missing MacBook data "on the party who wrongfully created risk"—Hammond. *See West*, 167 F.3d at 779.  This instruction "entitles the jury to draw an inference that a party who intentionally destroys important documents did so because the contents of those documents were unfavorable to that party." *Russell,* 234 F. App'x at 207. Therefore, the jury will be instructed that Hammond intentionally deleted the MacBook's data and the jury may, but need not, infer that the data from the MacBook, which could not be replaced by Hammond's drive or other sources of information, would have been unfavorable to Hammond.

Second, the Court finds Plaintiffs are entitled to attorneys' fees, costs, and expenses relating to the return of the laptop, the forensic analysis of the computer, and the pursuit of this Motion.

Finally, the Court will not impose an additional monetary sanction on Hammond. The Court believes the adverse jury instruction and attorneys' fees, costs, and expenses will sufficiently deter Hammond from engaging in further sanctionable conduct. *See id.* However, if Plaintiffs uncover additional misconduct, the Court will consider a monetary sanction on a future motion.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion for Spoliation Sanctions (Doc. 36). If the parties proceed to trial, the Court will include an adverse jury instruction regarding Hammond's spoliation. Hammond is also **ORDERED** to pay Plaintiffs' reasonable attorneys' fees, costs, and expenses incurred in while pursuing the return of the laptop, conducting the forensic analysis of the computer, and pursuing this Motion.

SO ORDERED.

SIGNED: February 9, 2023.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE